ANTHONY NEWBY, a minor, by his legal guardian and next friend HERSAL GOLLIDAY, et al., plaintiffs-petitioners, v. DISTRICT COURT OF WOODBURY COUNTY, HON. GEORGE PARADISE, Judge, defendant-respondent.

No. 52321.

1332

January 10, 1967.

Jesse, LeTourneau & Johnston, of Des Moines, for plaintiffs.

Edward Samore, of Sioux City, County Attorney, for defendant.

GARFIELD, C. J.—We granted a writ of certiorari under rules 306 to 319, Rules of Civil Procedure, to review orders of defendant judge of the district court of Woodbury County to punish the three plaintiffs for contempt. Defendant purported to act under chapter 665, Code, 1966, in making the orders. For convenience we treat Judge Paradise as sole defendant and ignore the fact the district court of Woodbury County is also a defendant.

To sustain the writ plaintiffs assert the orders are illegal and without jurisdiction because 1) the facts upon which defendant acted are, as a matter of law, insufficient to constitute contempt as defined in Code chapter 665, and 2) their effect was to deny plaintiffs essential elements of a criminal trial guaranteed by the federal and state constitutions.

I. We first summarize the facts set out in the return to the writ upon which it is conceded this cause must be determined.

On May 5, 1966, between 11 and 11:30 p.m., defendant observed through his bedroom windows the three plaintiffs and a fourth young man, Mike Gamel, across the street from his home in Sioux City. Defendant was awakened and kept awake by their very loud, profane and offensive language and disturbing actions and noise. They were pushing and grabbing each other; at times knocking and pulling the doors of a place of business; at times pulling, pushing and hitting a steel post parking sign; one or more plaintiffs threw and broke glass bottles on the street; they were running out on the street shouting at passing cars, the drivers of which at times sounded their horns and suddenly applied their brakes.

Soon after 11:30 the four young men crossed the street to the concrete steps of the house just south of defendant's home and engaged in loud and vulgar talk about sex and intercourse with a young girl; at times they were touching and grabbing her. Fearing for the young girl's safety and desiring to end the loud and disturbing noise, defendant dressed, went onto the porch and then to the sidewalk where the four young men were hiding behind a hedge. Defendant told them to stop their loud, offensive and disturbing voices and go home or he would see them the next day in court.

One of the four said, "Who in the hell are you"? Defendant replied, "I am Judge Paradise, I live here and what I just said to you is an order of court." Two of the four came near defendant, one on each side; a third, from a short distance in the street, said, "Oh, a judge. Let's get the son-of-a-b————." The word was not abbreviated. Defendant asked his wife to call the police. The young man to defendant's left swung at him and the one on his right crouched with his fist closed, ready to spring at him. To avoid the blows, defendant grabbed the swinging arm of the young man to his left and the long hair of the one to his right; the one in the street ran toward defendant, all three hit him several violent blows with their fists on his head, face and right arm, saying, "To hell with the judges and courts." One of the three kicked defendant on his side. Defendant did not strike any of the four. They all ran away before the police came.

Two of the four young men had juvenile proceedings pending in the Woodbury County District Court over which defendant and three other judges preside.

On May 12 the three plaintiffs and Gamel were served personally with a rule or order to show cause signed by defendant, pursuant to Code section 665.7, why they should not be punished for contempt for their contemptuous and insolent behavior toward defendant court and their violent attack upon a judge while engaged in the discharge of his judicial duties at the time and place (describing them) hereinbefore referred to. Attached to the rule or order was a copy of a statement of the facts upon which it was founded, signed by defendant and filed on May 12, pursuant to section 665.9. The facts previously summarized are taken from this statement.

The four young men appeared in defendant court on May 13. Each acknowledged he had been served with the rule or order and attached statement of facts. Each said he had no counsel, no funds with which to employ one, and desired defendant to appoint counsel for him. Defendant then appointed Mr. O'Brien, a former assistant county (prosecuting) attorney, to assist the three plaintiffs and Mr. McQueen, another experienced attorney, to assist Gamel. Gamel's mother had consulted Mr.

McQueen about the matter. Defendant approved a parent or relative of each of the four young men as surety on an appearance bond for each, set a hearing on the matter for May 18 and saw to it that the two attorneys were notified of their appointment and the hearing on the 18th. A complete record of what occurred on May 13 was made, transcribed and filed.

On May 18 Mr. McQueen, as permitted by section 665.7, filed a written explanation by Gamel of his conduct, under oath. Mr. O'Brien filed for the three plaintiffs a motion to dismiss the rule or order to show cause why they should not be punished for contempt on the ground they were not guilty of any act constituting contempt as defined in section 665.2. This is essentially the first of the two grounds of claimed illegality and want of jurisdiction here asserted. An argument, citing three of our opinions, was filed in support of the motion. The motion was orally argued by Mr. O'Brien and the county attorney, submitted to defendant and overruled.

Mr. O'Brien then filed an affidavit of each plaintiff reciting that he was involved in the fracas in the vicinity of defendant's home on the night of May 5; defendant's statement of facts, supra, is substantially true and correct; the affiant, together with the other three young men, was creating a disturbance, using loud and profane language in front of the home directly south of defendant's; "defendant remonstrated with us and a scuffle ensued; our actions * * * were unjustified and would not have been done individually; I am extremely sorry for my part in this altercation and extend my deepest apology to" defendant, "both as an individual and a Judge of the District Court of Woodbury County."

Before the motion to dismiss, supra, was argued on May 18, defendant added to his statement of facts previously summarized by asserting that the young man whose swinging arm defendant grabbed, who jerked loose and kicked him, was plaintiff Newby, age 17; the one whose hair was pulled and who, with plaintiffs Newby and Osborn, struck defendant and whose arm, after the attack, defendant held until he jerked loose, was plaintiff Jacobs, age 16; the one who said, "Oh, a judge. Let's get the" blankety blank, ran back from the street and struck defendant violently with his fists on his side, arm and face was plaintiff Osborn, age

19; the young man who, so far as defendant knows, struck no blow and apparently went across the street and ran away with the others from the scene was Gamel, age 17.

Mr. O'Brien and Mr. McQueen were each given full opportunity on May 18 to make any argument or statement he desired to defendant. Each young man was also asked to add anything he desired to what his attorney had stated or to the contents of his affidavit or the written explanation of Gamel, supra. Gamel orally expressed regret and sorrow for what happened. Plaintiff Jacobs also said he was sorry. Plaintiffs Osborn and Newby each had nothing further to add.

Defendant then announced he had no doubt the facts were substantially as set out in his statement of facts; the young men knew before the violent attack they were attacking a judge; in Iowa any officer authorized to punish for contempt is a court under section 665.1; a judge of the district court is such an officer and wherever he is within his jurisdiction is a court; district courts have inherent and statutory power to punish for contempt; he called attention to the definitions of contempt found in section 665.2, paragraphs 1, 3.

Defendant then proceeded to find the four young men guilty of contempt for their contemptuous, insolent and disrespectful behavior toward "this court and their disobedience and resistance" to defendant's order to stop disturbing the peace on the night of May 5, 1966, in front of his home in Sioux City. Defendant found, however, that Gamel had sufficiently explained his conduct and purged himself of contempt.

Each plaintiff was ordered imprisoned in the county jail for a period not exceeding six months and fined $500. In default of payment of the fine he was ordered committed to the jail an additional one day for each $4 of the fine.

A complete record of what occurred on May 18 was made, transcribed and filed.

II. Plaintiffs have the burden to show defendant has exceeded "his proper jurisdiction or otherwise acted illegally." Rule 306, Rules of Civil Procedure; Johnson v. Levis, 240 Iowa 806, 808, 38 N.W.2d 115, 116; Mangan v. Department of Public Safety, 258 Iowa 359, 364, 138 N.W.2d 922, 925.

In considering the first of the two asserted grounds of claimed illegality and want of jurisdiction in making the above orders we first go to Code chapter 665.

Section 665.1 provides: " 'Court' defined. Any officer authorized to punish for contempt is a court within the meaning of this chapter."

Section 665.2, so far as applicable, states: "Acts constituting contempt. The following acts or omissions are contempts, and are punishable as such by any of the courts of this state, or by any judicial officer, * * * acting in the discharge of an official duty, as hereinafter provided:

"1. Contemptuous or insolent behavior toward such court while engaged in the discharge of a judicial duty which may tend to impair the respect due to its authority.

"2. * * *

"3. Illegal resistance to any order or process made or issued by it."

It seems clear from the foregoing defendant was and is an officer authorized to punish for contempt and therefore a court within the meaning of chapter 665. It seems equally clear plaintiffs' behavior toward defendant was contemptuous and more particularly, insolent and it tended to impair the respect due his or its authority. To constitute contempt under 665.2, paragraph 1, however, such behavior must have been toward defendant "while engaged in the discharge of a judicial duty."

Article V of our state constitution, entitled JUDICIAL DEPARTMENT, provides in section 7, "The Judges of the Supreme and District Courts shall be conservators of the peace throughout the State."

If the mandatory duty enjoined upon the judges this provision refers to is a judicial duty defendant has good reason for his position that plaintiffs' conduct toward him was while he was engaged in the discharge of such a duty.

Harding v. McCullough, 236 Iowa 556, 560, 561, 19 N.W.2d 613, 616, 617, considers the meaning of "engaged in the discharge of a judicial duty," as used in what is now section 665.2, paragraph 1. It rejects the contention a judge was not so engaged in refusing to approve a bond while the clerk of

court was absent from his office. The opinion points out that Field v. Thornell, 106 Iowa 7, 11, 12, 75 N.W. 685, 68 Am. St. Rep. 281, holds, in effect, the quoted words "are entitled to a broad and liberal interpretation" and "do not limit contemptuous behavior to the time the court is actually in session nor to acts in its presence."

The Harding opinion also approves, as did Hutchins v. City of Des Moines, 176 Iowa 189, 205, 157 N.W. 881, this oft-repeated statement from In re Application of Cooper, 22 N.Y. 67, 82: "Whatever emanates from a judge as such, or proceeds from a court of justice, is, according to these authorities, judicial."

The Hutchins case also approves Bouvier's familiar definition of judicial power as "Belonging to or emanating from a judge as such; the authority vested in a judge."

State ex rel. Hovey v. Noble, 118 Ind. 350, 359, 21 N.E. 244, 248, 4 L.R.A. 101, 107, 10 Am. St. Rep. 143, 151, a leading precedent, approves the last two quoted statements following the assertion "It is a mistake to suppose that a court possesses merely the power to hear and decide causes."

Definitions of "judicial" found in 50 C. J. S., page 559, include "belonging to or emanating from a judge as such" and merely "emanating from a judge."

The holding in Field v. Thornell and Harding v. McCullough, both supra, that "engaged in the discharge of a judicial duty" is entitled to a broad and liberal interpretation complies with the requirement of Code section 4.2 that statutes shall be liberally construed.

Moreover, unless the duty imposed by Article V, section 7, of our state constitution on judges of the supreme and district courts to be conservators of the peace is a judicial duty, it would seem to conflict with Article III, section 1, entitled "OF THE DISTRIBUTION OF POWERS", of the same document. This provision is:

"The powers of the government of Iowa shall be divided into three separate departments—the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted."

■ It is our duty, if fairly possible, to harmonize these two constitutional provisions. 16 Am. Jur.2d, Constitutional Law, sections 66, 67; Kruidenier v. McCulloch, 258 Iowa 1121, 1133, 142 N.W.2d 355, 362. A holding that the duty imposed by Article V, section 7, is a judicial one avoids any repugnancy with Article III, section 1, supra.

Conservators of the peace were early public officers of the common law charged with the duty to prevent and arrest for breaches of the peace committed in their presence. They had no authority to arraign and try the offender until about 1360 when such authority was given them by parliament and then they acquired the title of justices of the peace. Even after this time, however, many public officers were styled conservators of the peace, not as a distinct office but by virtue of the duties pertaining to their office. In this sense, the term might include the king himself, the lord chancellor, justices of the King's bench and masters of the rolls as well as peace officers. Black's Law Dictionary, Fourth Ed., page 378; 15 C. J. S., page 984, note 4; Smith v. Abbott, 17 N. J. Law 358, 362; In re Barker, 56 Vt. 14, 20.

"Such persons [conservators of the peace] at first possessed no powers other than to maintain the public peace and tranquility of the realm. Gradually, however, their powers were enlarged * * * and they came to constitute a very important agency in the administration of local government, and in 34 Edward III, ch. 1, were invested for the first time with judicial powers and were commissioned by the King." Marcuchi v. Norfolk & W. Ry. Co., 81 W.Va. 548, 552, 94 S.E. 979, 980.

Thus long before our state constitution was adopted conservators of the peace were invested with judicial powers. Nothing in the constitution nor any statute called to our attention specifies the manner in which judges of this court or of the district courts shall discharge their duties as conservators of the peace.

■ Under a broad and liberal interpretation we have previously given the words "engaged in the discharge of a judicial duty", as used in section 665.2, paragraph 1, we think defendant was so engaged when plaintiffs attacked him. There is little

doubt they were committing a breach of the peace to which defendant was attempting to put an end.

"By 'peace' is meant the tranquility enjoyed by citizens of a community where good order prevails. It means quiet, orderly behavior of individuals toward others and the government." City of Des Moines v. Reiter, 251 Iowa 1206, 1210, 102 N.W.2d 363, 366, and citations; State v. Leonard, 255 Iowa 1365, 1371, 1372, 124 N.W.2d 429, 433.

A familiar definition of "public peace" is that invisible sense of security which every person feels and which is necessary to his comfort and for which government is instituted. Marcuchi v. Norfolk & W. Ry. Co., supra, 81 W. Va. 548, 553, 94 S.E. 979, 981; Annotation, 48 A. L. R. 83, 90, 91.

This last definition in the Marcuchi opinion is preceded by the statement, "The phrase 'breach of the peace' has a wide and general application and meaning and comprehends disturbances of the public peace violative of order and decency or decorum; * * *."

III. We cannot accept plaintiffs' argument that the power to adjudge a person in contempt and punish therefor under such statutes as ours is limited to acts committed in "duly constituted judicial proceedings," nor the argument that defendant acted without jurisdiction because no action had been commenced and prescribed notice given plaintiffs (if true) before defendant "ordered them to be quiet and go home." This last argument overlooks the fact juvenile proceedings involving two of the three plaintiffs were pending in defendant court and the three plaintiffs acted in concert in what they did on the night of May 5. The arguments are also contrary to Code sections 665.1 and 665.2, paragraph 1, supra, and several decisions of this and other courts.

See precedents cited supra, also Bisignano v. Municipal Court, 237 Iowa 895, 23 N.W.2d 523 (certiorari denied 330 U. S. 818, 67 S. Ct. 674, 91 L. Ed. 1270); Weldon v. State, 150 Ark. 407, 234 S.W. 466, 18 A. L. R. 202, and annotation, 212, 213, 214; Turquette v. State, 174 Ark. 875, 298 S.W. 15, 55 A. L. R. 1226, 1230; Ex parte McCown, 139 N. C. 95, 51 S.E. 957, 2 L. R. A., N. S., 603, and citations.

Ex parte McCown is perhaps the leading American prece-

dent in the area of the law with which we are here concerned.

Our Bisignano opinion approves the three cases last cited and, referring to the behavior proscribed by what is now section 665.2, paragraph 1, says, "The courts have frequently held that an assault upon a judge constitutes such conduct" (page 906 of 237 Iowa, page 530 of 23 N.W.2d). 17 Am. Jur.2d, Contempt, section 16, also says that assaults upon a judge have been held to constitute contempts.

The record here clearly shows plaintiffs assaulted defendant with full knowledge he was a judge and because he held such position and while he was in the discharge of a duty enjoined upon district judges by Article V, section 7, of our state·constitution. We adhere to this statement in Harding v. McCullough, supra, 236 Iowa 556, 559, 19 N.W.2d 613, 616, "We are not here concerned with the respect that may be due defendant as an individual."

IV. In view of our conclusion that defendant did not act in excess of jurisdiction or otherwise illegally, within the meaning of rule 306, Rules of Civil Procedure, relating to certiorari, in purporting to act under section 665.2, par. 1, supra, it is deemed unnecessary to consider whether he so acted under 665.2, par. 3, supra, regarding illegal resistance to any order or process made by a court (including, according to 665.1, supra, any officer authorized to punish for contempt).

V. Plaintiffs are not entitled to urge here the second of the two grounds of claimed illegality, and want of jurisdiction stated in the second paragraph of this opinion, viz., that plaintiffs were illegally denied the essential elements of a criminal trial guaranteed by Federal and State Constitutions. No such contention was made before defendant nor in their petition for writ of certiorari in this court. This claim was first made in their brief and argument here. Theretofore the sole ground of asserted illegality and want of jurisdiction was the first ground, considered in Divisions II and III hereof, supra.

We have held in at least three certiorari actions that "an inferior tribunal" (see rule 306, R. C. P.) does not act in excess of jurisdiction or otherwise illegally as to a matter not before it and courts will not review questions not presented

to the so-called inferior tribunal. O'Connor v. Youngblade, 250 Iowa 808, 814, 96 N.W.2d 457, 461, and citations.

However, we will say the contention belatedly asserted here is without merit. Plaintiffs tell us the most serious deprivation of what are thought to be their constitutional rights is denial of a jury trial. This court has repeatedly held for more than a hundred years that a person may be punished for contempt without a jury trial. Clark v. District Court, 255 Iowa 1005, 1009, 125 N.W.2d 264, 266, 267, and citations (certiorari denied 366 U. S. 949, 81 S. Ct. 1903, 6 L. Ed.2d 1242).

"The power to proceed summarily, without formal indictment and without the intervention of a jury, to hear charges of contempt of court, and to assess punishment upon those found guilty, has been an attribute of all courts of record in every stage of the development of our system of procedure." Jones v. Mould, 151 Iowa 599, 605, 132 N.W. 45, 48.

Field v. Thornell, supra, 106 Iowa 7, 10, 75 N.W. 685, 68 Am. St. Rep. 281, says of the exercise of the power to punish for contempt that it "may be traced as far back in antiquity as the trial by jury; and it has been well said that the experience of ages has demonstrated its compatibility with civil liberty and the purest ends of justice."

See also Green v. United States, 356 U. S. 165, 183, 78 S. Ct. 632, 643, 2 L. Ed.2d 672, 688, 689, and authorities cited footnote 14. The effect of plaintiffs' argument is that we should overrule our many prior decisions and adopt the view expressed in the dissenting opinion of Mr. Justice Black in the Green case.

Defendant could have asked another judge of the Fourth Judicial District (in which Woodbury County is situated) to hear and dispose of the alleged contempt and might well have done so even though not requested. Bisignano v. Municipal Court, supra, 237 Iowa 895, 910, 23 N.W.2d 523, 532, and citation; Drady v. District Court (Given), 126 Iowa 345, 353, 102 N.W. 115. However, it is implicit in these and other precedents that defendant did not exceed his jurisdiction or otherwise act illegally by hearing and disposing of the matter himself nor is any such question presented to us.

VI. As stated, the orders under review sentenced each

plaintiff to six months in the county jail and to pay a fine of $500. In default of payment, commitment to the jail an additional day for each $4 of the fine was ordered. This is the maximum jail sentence and fine section 665.4, paragraph 2, permits.

Section 665.11 provides: "Revision by certiorari. No appeal lies from an order to punish for a contempt, but the proceedings may, in proper cases, be taken to a higher court for revision by certiorari."

Rule 316, R. C. P., states: "Judgment limited. Unless otherwise specially provided by statute, the judgment on certiorari shall be limited to sustaining the proceedings below, or annulling the same wholly or in part, to the extent that they were illegal or in excess of jurisdiction, and prescribing the manner in which either party may proceed further, nor shall such judgment substitute a different or amended decree or order for that being reviewed."

Under this rule we have held we may sustain or annul in whole or in part or modify the proceedings reviewed but cannot enlarge or substitute a new order for the one challenged. Iowa-Illinois Gas and Electric Co. v. Gaffney, 256 Iowa 1029, 1042, 129 N.W.2d 832, 840.

Under what is now section 665.4, par. 2, and a statute (section 3222, Code, 1873) generally similar to R. C. P. 316, we reduced in certiorari the punishment imposed for contempt. The State v. Myers, 44 Iowa 580, 584, 585. And under the present statute and rule, supra, we reduced, in certiorari, the jail sentence. Jones v. Levis, 240 Iowa 602, 608, 35 N.W.2d 891, 36 N.W.2d 756.

In Battani v. Grund, 244 Iowa 623, 631, 632, 56 N.W.2d 166, 172, and Clark v. District Court, supra, 255 Iowa 1005, 1012, 125 N.W.2d 264, 268, we considered, in certiorari, the excessiveness of the punishment for contempt but sustained it. The trial court has a wide range of discretion as to the punishment to be imposed and we interfere with its exercise only where the discretion has been clearly abused. Jones v. Levis, Battani v. Grund and Clark v. District Court, all supra.

We think the punishment imposed here was unduly

severe in view of· the immaturity of plaintiffs and their subsequent apologies. We modify the· orders by reducing the punishment to confinement in the county jail for 60 days, with credit for the time served therein (about 51 days) before. the stay order from this court became effective. Costs in defendant court and this court to be taxed to plaintiffs.—Orders modified by reducing the punishment and otherwise sustained; writ annulled.

LARSON, SNELL, MOORE and MASON, JJ., concur.

THORNTON and BECKER, JJ., dissent.

RAWLINGS and STUART, JJ., take no part.