**George SARICH d/b/a Davenport Dental Lab, Petitioner,**

v.

**The Honorable James R. HAVERCAMP, Judge of the District Court of Iowa in and for Scott County, Respondent.**

**No. 55096.**

Supreme Court of Iowa.

Dec. 20, 1972.

McCracken & Carlin, Davenport, for petitioner.

Keith Stapleton, Cedar Rapids, for respondent.

Heard before MOORE, C. J., and MASON, RAWLINGS, REES and HARRIS, JJ.

REES, Justice.

This matter comes to us on certiorari to review the action of the district court of Scott County in finding petitioner had violated a permanent injunction by which he was restrained from engaging in the practice of dentistry without having obtained a license. The respondent court, after finding petitioner had violated the terms of the permanent injunction, entered judgment and imposed sentence, and the petitioner brings certiorari.

A detailed chronology of the factual situation is necessary to an understanding of the propositions relied on by petitioner for sustaining the writ of certiorari.

The petitioner is a dental laboratory technician engaged in the operation of a laboratory in Davenport. On September 3, 1957 he was enjoined permanently from making impressions from the oral cavities of human beings, or engaging in the practice of dentistry in any manner, as the same is defined by the provisions of section 153.1 of the Code of Iowa, 1954, without having first obtained a license as required for the practice of dentistry by the laws of the State of Iowa. Service of the permanent writ of injunction was accomplished on petitioner on September 4, 1957.

The action out of which the writ of injunction emanated was instituted in the district court of Scott County and was entitled, "State of Iowa, ex rel Dr. Edmund G. Zimmerer, Commissioner of Public Health of the State of Iowa, versus George Sarich d/b/a Davenport Dental Laboratory".

The petitioner was found guilty of contempt in violating the terms of the injunction on three separate occasions before the happenings with which we are concerned here. On October 31, 1957 he was found guilty of contempt and fined $300; on September 16, 1960 he was again found guilty of contempt, fined $300 and sentenced to a term of 60 days in the Scott County jail, which sentence was suspended. He was again found guilty of contempt on May 10, 1963, at which time the parole granted to him on September 16, 1960 was revoked, and he was ordered to serve the term of 60 days in the Scott County jail and fined $500. In addition thereto, on May 10, 1963, he was sentenced to serve a term of six months in the Scott County jail, but such jail term of six months was suspended upon the condition the petitioner thereafter fully comply with the terms of the decree and the permanent injunction. In the order of court of May 10, 1963 it was further provided the court might revoke the six months suspended sentence without further hearing or notice.

As noted above, the action out of which emanated the writ of injunction which petitioner is now charged with having contemptuously violated, was instituted by the commissioner of public health. The State department of health was at all times charged with the duty of enforcing the provisions of the practice act including all statutes relating to the practice of dentistry by the provisions of section 147.87, The Code, 1954. Section 147.83, The Code, 1954, provided that "any person engaging in any business or in the practice of any profession for which a license was required by this title (Title VIII) of the Code without such license may be re-strained by permanent injunction". The same statutory provision appears verbatim in our present statute.

The Iowa legislature, by enacting chapter 166 of the Acts of the 62nd General Assembly, which was approved June 30, 1967, established and created a State board of dentistry, and prescribed the powers and duties of the board. It expressly authorized the State board of dentistry, thereby created, to administer the provisions of the act and other statutes contained in Title VIII of the Code relating to the practice of dentistry. The act provided that, subject to the provisions thereof, any provision of Title VIII of the Code to the contrary notwithstanding, the State board of dentistry was empowered to initiate in its own name or cause to be initiated in a proper court, appropriate civil proceedings against any person to enforce the provisions of the act or of Title VIII of the Code relating to the practice of dentistry. Chapter 166 of the acts of the 62nd General Assembly now appears as chapter 153, The Code, 1971.

The matter which is immediately before us arose out of the filing on April 22, 1969 of an application for a rule to show cause, to which was attached an affidavit purporting to show the petitioner here had been guilty of acts and conduct which were in effect contemptuous of the permanent writ of injunction restraining him from engaging in the practice of dentistry. While the application for the rule to show cause was filed in the original action, which had been instituted on the relation of Dr. Edmund G. Zimmerer as commissioner of public health of the State of Iowa, and the application for rule to show cause last referred to, was entitled, "Iowa State Board of Dentistry, plaintiff vs. George Sarich d/b/a Davenport Dental Lab", it was still filed as above recited in the original action. An order (fixing hearing on the application requiring the petitioner here to show cause why he should not be punished for contempt of court for disobeying the permanent injunction) was en-

tered, but hearing was continued from time to time due to the illness of the petitioner here.

In compliance with an order requiring the State board of dentistry to make its application for rule more specific, a supplemental affidavit was filed. Later, on June 19, 1969 there was filed on the part of Mr. Sarich a demand for jury trial, and while no resistance to the demand for jury trial appears in the record, it does appear the matter was orally presented to the court, and on June 27, 1969 the Honorable R. K. Stohr entered an order denying defendant's demand for jury trial.

Thereafter the petitioner here filed his motion to dismiss the order to show cause, asserting the Iowa state board of dentistry was a stranger to the action and had no standing before the court to seek relief in the manner claimed; asserting in substance that the sole and exclusive person or party who could enforce the alleged violation of the permanent injunction was the department of public health.

The motion to dismiss was orally argued to the Honorable R. K. Stohr, who sustained the motion to dismiss on the grounds that the question presented by the motion went to the question of jurisdiction and that the application, bearing the caption as it did and indicating the order to show cause was sought by the Iowa state board of dentistry rather than the original relator, Dr. Zimmerer, or his successor, was totally defective. The motion was sustained therefore on the ground that the matter was not presented to the court under the proper caption.

On July 15, 1969, following the entry of the order sustaining the motion to dismiss entered July 9, the Iowa state board of dentistry filed its motion to be substituted as party plaintiff, asserting that the powers of enforcement of the original action were terminated under the provisions of chapter 166 of the acts of the 62nd General Assembly, and that the State board of dentistry was created thereunder for the enforcement of the practice acts as related to the practice of dentistry, and had succeeded to the powers and duties of the commissioner of public health in accordance with the act. Contemporaneously with the filing of the motion for substitution of party plaintiff there was filed by the State board of dentistry an amendment to the application for rule to show cause, substituting the State board of dentistry as plaintiff. The State board of dentistry was ordered substituted as plaintiff by order entered August 13, 1969 by the Honorable Lowell D. Phelps, Judge of the Seventh District. After continuances bottomed upon the incapacity of the defendant (the petitioner here), the matter proceeded to trial before the Honorable James R. Havercamp, who found the petitioner here had been shown by clear and convincing evidence to be guilty of violating the permanent injunction in five separate instances. He revoked the parole granted defendant by the order of May 10, 1963, and directed that Mr. Sarich serve the term of six months in the county jail as provided therein. As punishment for the five separate contempts, he ordered defendant to pay a fine of $2,000, and to serve a term of six months in the Scott County jail, which sentence was to run consecutively to the sentence imposed by the order of May 10, 1963.

The petitioner here seeks to review the order of Judge Phelps in permitting the substitution of the Iowa state board of dentistry for the plaintiff in the action as originally brought, and the order of Judge Stohr denying the petitioner here a jury trial on the claimed contempts. He further contends the trial court (Judge Havercamp) exceeded its jurisdiction in finding the petitioner guilty of contempt in that the prohibitions direected against him in the permanent writ of injunction were indefinite and uncertain in scope. Finally he asserts the trial court exceeded its jurisdiction in finding the petitioner guilty of contempt, and that it abused its discretion by imposing an excessive sentence for the

contemptuous acts, if any were proven in the case.

I. We first consider the contentions of the petitioner that trial court erred and exceeded its jurisdiction in permitting the State board of dentistry to prosecute the action as a successor in interest to the State board of health, and that the court further erred and exceeded its jurisdiction in refusing to hold that the dismissal entered on July 9, 1969 barred further prosecution of the action predicated upon the same facts, issues and identification of parties.

In these contentions of the petitioner we perceive no merit. Prior to the enactment of chapter 166 of the acts of the 62nd General Assembly, the enforcement of practically all "practice acts" relating to public health were within the province of the State department of health and its commissioner. Acting thereunder, the injunction was sought against the petitioner here by Dr. Edmund G. Zimmerer, Commissioner of Public Health, the injunction having been ordered to issue on September 3, 1957. The petitioner was three times found guilty of contempt in violating the terms of the injunction prior to the enactment of chapter 166 of the acts of the 62nd G.A., viz.: on October 31, 1957, on September 16, 1960, and on May 10, 1963. Clearly, the legislature provided for the enforcement of the practice act by the Iowa state board of dentistry when it enacted chapter 166, which now appears in our codified law as chapter 153, The Code, 1971.

Indeed, the order of Judge Stohr dismissing the application for rule to show cause is bottomed only upon the *form* of the application and not the *substance* thereof. In his order sustaining the motion to dismiss, Judge Stohr recited, "It is the judgment of this court that the application must have the same caption of the case in which the injunction was issued, and without that proper caption must fail as being totally defective. Without this caption it becomes a new action under chapter 153, I.C.A., and does not constitute a continuation of cause number 41247, equity, Scott County, Iowa. It is, therefore, ordered that defendant's motion to dismiss is hereby sustained, *on the ground that the application for order to show cause is not brought under the proper Action*." (italics supplied).

We cannot interpret the ruling of Judge Stohr in sustaining the petitioner's motion to dismiss as being directed at any of the substantive aspects of this case. Clearly, the order of Judge Phelps in permitting the substitution of plaintiffs was in keeping with the letter of chapter 166 of the acts of the 62nd G.A. Patently, the application for the order to permit substitution of the State board of dentistry as plaintiff related back to the original application for a rule to show cause, and for the court to have directed the filing of a new application would have been to require needless and duplicative effort.

In addition thereto, we perceive that the order for substitution comes well within the contemplation of rule 20, R.C.P., which provides "when any public official, or any administrator, express trustee or other person in a representative capacity, ceases to be such while a party to a suit the court may order his successor brought in and substituted for him."

A reading of section 153.33, The Code, 1971, and sub-section three thereof, is conclusive in this area of concern. In this connection, see State v. Rudolph, 240 Iowa 726, 730, 37 N.W.2d 483, 486, where this court said, "We said in the early case of The First Congregational Church of Bloomington v. City of Muscatine, 2 Iowa 69, 71: ' * * * The proceeding to punish a contempt of process, though based upon, is merely incidental to, and to a great extent independent of, the original proceeding in which it may be invoked. *Indeed, such proceeding need not be entitled as of the original cause * * *.' "* We conclude therefore there was no error on the part of

the trial court in permitting the substitution of the Iowa state board of dentistry as plaintiff in the contempt proceedings.

II. We now consider petitioner's claimed error on which he relies to justify the sustaining of the writ of certiorari, in which he asserts trial court erred and exceeded its jurisdiction in refusing to grant the petitioner a jury trial on the issues of fact as guaranteed by the fifth and fourteenth amendments of the Constitution of the United States.

Some time subsequent to the filing of the application for rule to show cause filed on April 22, 1969, the petitioner filed his demand for jury trial.

In his demand the petitioner here, defendant in the action in the trial court in which he was charged with having contemptuously violated the provisions of the permanent writ of injunction, directed the court's attention to the fact the Iowa State board of dentistry was charging him with 28 separate acts of contempt, each of which was punishable by fine of $500 and imprisonment in the county jail for six months, and that in the aggregate he was exposed to liability for fine of $14,000 and 14 years imprisonment. He asserted further in his demand for jury trial that the criminal contempts charged subjected the petitioner here to severe punishment, not petty in nature, and that the claimed contempt constituted serious contempts within the purview of the United States Constitution and the fifth, sixth and fourteenth amendments thereof.

In denying the petitioner here a jury trial on the contempt charges, the trial court in its order recited it had considered the cases of Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522; Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491; United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L. Ed.2d 23; Cheff v. Schnackenberg, 384 U. S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629; and the case of Newby v. District Court of Woodbury County, 259 Iowa 1330, 147 N. W.2d 886. In its order overruling the demand for jury trial, the trial court recited,

"It is the feeling of this court at this time that this should be decided by the Iowa Supreme Court, and this case should follow the rules of Newby, *supra*.

In Newby v. District Court of Woodbury County, *supra*, 259 Iowa at 1342, 147 N.W.2d at 893 (decided January 10, 1967), this court said,

" * * * we will say the contention belatedly asserted here is without merit. Plaintiffs tell us the most serious deprivation of what are thought to be their constitutional rights is denial of a jury trial. This court has repeatedly held for more than a hundred years that a person may be punished for contempt without a jury trial. Clark v. District Court, 255 Iowa 1005, 1009, 125 N.W.2d 264, 266, 267, and citations.

"The power to proceed summarily, without formal indictment and without the intervention of a jury, to hear charges of contempt of court, and to assess punishment upon those found guilty, has been an attribute of all courts of record in every stage of the development *of our system of procedure.* Jones v. Mould, 151 Iowa 599, 605, 132 N.W. 45, 48.'

In Cheff v. Schnackenberg, *supra*, at 384 U.S. 373, 86 S.Ct. 1523, 1526, 16 L.Ed.2d 629, the United States Supreme Court said,

"Since Cheff received a sentence of six months' imprisonment (see District of Columbia v. Clawans, *supra*, 300 U.S. [617], at 627–628, 57 S.Ct. [660], at 663–664, 81 L.Ed. 843), and since the nature of criminal contempt, an offense *sui generis*, does not, of itself, warrant treatment otherwise (cf. District of Columbia v. Colts, *supra*, [282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177]), Cheff's offense can be treated only as 'petty' in the eyes of the statute and our prior decisions. We conclude therefore that Cheff was properly convicted without a jury. At

the same time, we recognize that by limiting our opinion to those cases where a sentence not exceeding six months is imposed we leave the federal courts at sea in instances involving greater sentences. Effective administration compels us to express a view on that point. Therefore, in the exercise of the Court's supervisory power and under the peculiar power of the federal courts to revise sentences in contempt cases, we rule further that sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof."

*Cheff* was decided June 6, 1966.

In Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (decided May 20, 1968), the defendant was convicted of simple battery. His application for certiorari was denied by the Supreme Court of Louisiana. In holding that where a defendant accused under the Louisiana law of simple battery, a misdemeanor punishable by a maximum of two years imprisonment and $300 fine, was entitled to jury trial, the Supreme Court of the United States said, at page 1452 of 88 S.Ct. Reporter:

"Louisiana's final contention is that even if it must grant jury trials in serious criminal cases, the conviction before us is valid and constitutional because here the petitioner was tried for simple battery and was sentenced to only 60 days in the parish prison. We are not persuaded. It is doubtless true that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision, and should not be subject to the Fourteenth Amendment jury trial requirement here applied to the States. Crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses (citations). But the penalty authorized for a particular crime is of major relevance in determining whether it is serious or not and may in itself, if severe enough, subject

the trial to the mandates of the Sixth Amendment (citations). The penalty authorized by the law of the locality may be taken 'as a gauge of its social and ethical judgments.'

"In *Clawans* (District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843) the defendant was jailed for 60 days, but it was the 90-day authorized punishment on which the Court focused in determining that the offense was not one for which the Constitution assured trial by jury. In the case before us the Legislature of Louisiana has made simple battery a criminal offense punishable by imprisonment for up to two years and a fine. The question, then, is whether a crime carrying such a penalty is an offense which Louisiana may insist on trying without a jury." * * * *

"In determining whether the length of the authorized prison term or the seriousness of other punishment is enough in itself to require a jury trial, we are counseled by District of Columbia v. Clawans, supra, to refer to objective criteria, chiefly the existing laws and practices in the Nation. In the federal system, petty offenses are defined as those punishable by no more than six months in prison and a $500 fine. * * * We need not, however, settle in this case the exact location of the line between petty offenses and serious crimes. It is sufficient for our purposes to hold that a crime punishable by two years in prison is, based on past and contemporary standards in this country, a serious crime and not a petty offense. Consequently, appellant was entitled to a jury trial and it was error to deny it."

In Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (decided May 20, 1968), the defendant was held in contempt for allegedly filing a spurious will for probate, and sentenced to imprisonment for 24 months for willfully petitioning to admit to probate a will falsely prepared and executed after the death of the putative testator.

He made timely demand for a jury trial which was refused. At page 1479 et seq., of 88 S.Ct., the court said:

"It was not necessary in *Cheff* to consider whether the constitutional guarantees of the right to jury trial applied to a prosecution for a serious contempt. Now, however, because of our holding in Duncan v. State of Louisiana, supra, that the right to jury trial extends to the States, and because of Bloom's demand for a jury in this case, we must once again confront the broad rule that all criminal contempts can be constitutionally tried without a jury. *Barnett* presaged a re-examination of this doctrine at some later time; that time has now arrived.

"In proceeding with this task, we are acutely aware of the responsibility we assume in entertaining challenges to a constitutional principle which is firmly entrenched and which has behind it weighty and ancient authority. Our deliberations have convinced us, however, that serious contempts are so nearly like other serious crimes that they are subject to the jury trial provisions of the Constitution, now binding on the States, and that the traditional rule is constitutionally infirm insofar as it permits other than petty contempts to be tried without honoring a demand for a jury trial. We accept the judgment of *Barnett* and *Cheff* that criminal contempt is a petty offense unless the punishment makes it a serious one; but, in our view, dispensing with the jury in the trial of contempts subjected to severe punishment represents an unacceptable construction of the Constitution, 'an unconstitutional assumption of powers by the (courts) which no lapse of time or respectable array of opinion should make us hesitate to correct.' Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab Transfer Co., 276 U.S. 518, 533, 48 S.Ct. 404, 408, 72 L.Ed. 681 (1928) (Holmes, J., dissenting). The rule of our prior cases has strong, though sharply challenged, historical support; but

neither this circumstance nor the considerations of necessity and efficiency normally offered in defense of the established rule, justify denying a jury trial in serious criminal contempt cases. The Constitution guarantees the right to jury trial in state court prosecutions for contempt just as it does for other crimes."

In Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437, defendant was charged with jostling and his pretrial motion for jury trial was denied. He was convicted and sentenced to a maximum one-year term. The New York Court of Appeals affirmed, and in reversing the U. S. Supreme Court, at pages 72–73 of 399 U.S., pages 1890, 1891 of 90 S.Ct. said:

"Except for the criminal courts of New York City, every other court in the Nation proceeds under jury trial provisions that reflect this 'fundamental decision about the exercise of official power,' * * * when what *is at stake is the deprivation of individual liberty for a period exceeding six months.* This near-uniform judgment of the Nation furnishes us with the only objective criterion by which a line could ever be drawn—on the basis of the *possible penalty* alone—between offenses that are and that are not regarded as 'serious' for purposes of trial by jury.

"Of necessity, the task of drawing a line 'requires attaching different consequences to events which, when they lie near the line, actually differ very little.' Duncan v. Louisiana, *supra*, 391 U.S. at 161, 88 S.Ct. at 1453. One who is threatened with the possibility of imprisonment for six months may find little difference between the potential consequences that face him, and the consequences that faced appellant here. Indeed, the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or 'petty' matter and may well result in quite serious repercussions affecting his career and his reputation. Where the accused cannot possibly face more than six months' imprisonment, we have held that these disadvan-

tages, onerous though they may be, may be outweighed by the benefits that result from speedy and inexpensive non-jury adjudications. We cannot, however, conclude that these administrative conveniences, in light of the practices that now exist in every one of the 50 States as well as in the federal courts, can similarly justify denying an accused the important right to trial by jury where the possible penalty exceeds six months' imprisonment." (emphasis supplied)

See also American Bar Association, Project on Standards for Criminal Justice, Advisory Committee on the Criminal Trial, Trial by Jury 20–23 (Approved Draft 1968) in which it is recommended that the possibility of six months' imprisonment and a fine of $500 "should be the upper limit upon the definition of 'petty offenses'".

The trial court here was mandated, as are we, to refer to objective criteria. In *Duncan* and *Baldwin, supra,* we are directed to look to the penalty authorized for a particular offense in determining whether it is serious or not and may, if severe enough, subject the party charged with either fine or imprisonment or both to such a degree or in such an amount as to render the offense a "serious" one. Whereas here, petitioner Sarich was exposed to a fine of $14,000 maximum or imprisonment for a maximum term of 14 years, it can hardly be said the offense or offenses charged was or were petty.

■ We adopt the view the penalty involved, that is, the statutorily authorized maximum penalty shall be the relevant criterion as to the determination of a contemnor's right to a trial by jury, *vis-a-vis* the view the penalty actually imposed shall be determinative of the question.

In United States v. Seale, 461 F.2d 345 (decided May 11, 1972), at page 352, the Circuit Court, 7th Cir., said:

"In Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522, the Supreme Court held that the Sixth Amendment right to trial by jury applies to serious criminal contempts. In the case of criminal contempts, as with other crimes, the relevant criterion of seriousness is the penalty involved. Id. at 198, 211, 88 S.Ct. at 1487; Cheff v. Schnackenberg, 384 U.S. 373, 380, 86 S.Ct. 1523, 16 L. Ed.2d 629. Ordinarily, the statutorily authorized maximum penalty is determinative (Baldwin v. New York, 399 U.S. 66, 72–74, 90 S.Ct. 1886, 26 L.Ed.2d 437), but since Congress has not expressed a judgment as to the seriousness of a criminal contempt by prescribing a maximum sanction in 18 U.S.C. § 401, we are to look to the penalty actually imposed. Frank v. United States, 395 U.S. 147, 148–150, 89 S.Ct. 1503, 23 L.Ed.2d 162; Bloom v. Illinois, *supra,* 391 U.S. at 211, 88 S.Ct. 1477; Cheff v. Schnackenberg, *supra,* 384 U.S. at 380, 86 S.Ct. 1523. If the penalty actually imposed exceeds six months' imprisonment, the maximum sentence for 'petty offense' under 18 U. S.C. § 1, the contempt is serious, and a jury trial must be afforded. Frank v. United States, *supra,* 395 U.S. at 151, 89 S.Ct. 1503; see Cheff v. Schnackenberg, *supra,* 384 U.S. at 379–380, 86 S.Ct. 1523."

■ In the matter before us here the employment of either the "potential penalty" or "imposed penalty" criteria dictates our sustaining the writ of certiorari and remanding for trial of the claimed contempt matters to a jury.

We conclude trial court fell into error in refusing petitioner's demand for jury trial. This necessitates our sustaining of the writ and a remand for proper disposition at the trial court level.

■ III. Petitioner asserts as a ground for sustaining the writ of certiorari the prohibitions directed against him in the writ of injunction are so indefinite and uncertain in scope that the provisions thereof upon which contempt could be sought rested upon implication and conjecture.

We do not agree. By the express language of the writ of injunction Mr. Sarich

was restrained and enjoined from "making impressions from the oral cavities of human beings or engaging in the practice of dentistry in any manner." He had thrice before been found guilty of violating the terms of the writ, and was certainly conversant with its prohibitory provisions. The restrictive provisions are clear, certain and understandable. We find no merit in petitioner's contention in this regard.

IV. The other errors assigned by petitioner upon which he relies for the sustaining of the writ all are directed at evidentiary questions and the petitioner's claim the trial court exceeded its jurisdiction and abused its discretion by imposing an excessive sentence. In light of our conclusion to sustain the writ and to remand this cause for disposition by trial to a jury, we deem it unnecessary to consider the other propositions the petitioner now urges.

For the refusal of the trial court to afford petitioner a jury trial in the contempt proceedings, we sustain the writ and remand for further proceedings in keeping with this opinion.

Writ sustained and cause remanded.