# IN THE COURT OF APPEALS OF IOWA

No. 20-1018
Filed April 14, 2021

**BRADLEY E. WENDT,**
    Plaintiff-Appellant,

**vs.**

**MAHANAIM N. PETERSON,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Crawford County, Duane E. Hoffmeyer, Judge.

Bradley Wendt appeals the dismissal of his application for order for rule to show cause. **AFFIRMED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

Maura Sailer of Reimer, Lohman, Reitz, Sailer & Ullrich, Denison, for appellee.

Considered by May, P.J., Greer, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MAY, Presiding Judge.**

Bradley Wendt appeals the dismissal of his application for order for rule to show cause against his child's mother, Mahanaim Peterson.[1] We affirm.

**I. Background**

This is the parties' second appeal in less than a year. *See Wendt v. Peterson*, No. 20-0060, 2020 WL 4814153 (Iowa Ct. App. Aug. 19, 2020).

Wendt and Peterson are the never-married parents of the child. In September 2018, Wendt commenced a custody action. In November 2019, the court entered a decree awarding physical care to Peterson, determining child support, and crafting the visitation schedule. Wendt appealed.

While that appeal was pending, Wendt filed an application for order for rule to show cause, which is the subject of this appeal.[2] Wendt claimed Peterson violated a provision of the decree that states: "When it becomes necessary that a child be cared for by a person other than a parent or a responsible household family member, the parent needing the child care shall first offer the other parent the opportunity for additional parenting time." Wendt asked for money damages and for Peterson to serve jail time.

About a month later, in March 2020, Peterson filed a "Motion for Declaratory Judgment."[3] Peterson asked the district court to declare the meaning of the

---

[1] Rule to show cause proceedings are commonly referred to as contempt proceedings.

[2] "It is true that, once a notice of appeal is filed, the district court loses jurisdiction. But there is an exception. The district court 'retains jurisdiction to proceed as to issues collateral to and not affecting the subject matter of the appeal.'" *Schettler v. Iowa Dist. Ct.*, 509 N.W.2d 459, 463–64 (Iowa 1993) (citation omitted).

[3] The motion cited Iowa Rule of Civil Procedure 1.1101. We need not consider whether rule 1.1101 authorizes motions for declaratory judgment where, as here,

"additional parenting time" provision relied on by Wendt. Peterson noted that the provision does not appear in the body of the court's decree. Instead, it appears in one of several "Exhibits" attached to the decree. Specifically, it appears in "Exhibit D," which is entitled "General Rules Applicable to Parenting Time." In Peterson's view, the provisions of Exhibit D did not "impose a definite duty to obey." Rather, they provided "recommendations of best practices to the parties when raising a child in two separate households."

In April, the court entered an order on Peterson's motion. The court concluded all of the "rules" contained in "Exhibit D" to the decree "are mandatory." This included the provision on which Wendt's application for rule to show cause was based.

In July, a different judge heard Wendt's contempt action. The contempt court concluded that the decree's "additional parenting time" provision was aspirational rather than mandatory. The court also concluded Wendt had not met his burden of proof of showing a willful violation of a court order beyond a reasonable doubt. So the court dismissed Wendt's contempt claims. This appeal follows.

**II. Standard of Review**

In his appellate brief, Wendt observes that "review of a district court's denial of an application to punish for contempt, i.e., application for order for rule to show cause, is for an abuse of discretion." Peterson agrees.

---

no declaratory judgment action was filed and no appeal from the declaratory judgment order has been filed.

As authority, Wendt relies on Iowa Code section 598.23 (2020), which governs dissolution cases. Similarly, Peterson cites cases involving dissolutions. But Wendt and Peterson were never married. So we believe Wendt's contempt claims are governed by section 600B.37 and chapter 665, the general contempt provisions. *See In re Myers*, 874 N.W.2d 679, 680–81 (Iowa Ct. App. 2015) (discussing Iowa Code sections 600B.37, 665.4, and 665.5).

Even so, we do not believe a different standard of review applies. The district court has "a wide range of discretion as to the punishment to be imposed" for contempt under chapter 665. *Newby v. Dist. Ct.*, 147 N.W.2d 886, 894 (Iowa 1967). We infer the district court has broad discretion to withhold punishment. *Cf. id.* We also infer that appellate courts should interfere only where that discretion "has been clearly abused." *See id.*

### III. Analysis

Wendt claims the district court abused its broad discretion by declining to hold Peterson in contempt. We disagree.

To prove contempt, Wendt was required to prove Peterson willfully disobeyed a court order. *See In re Inspection of Titan Tire*, 637 N.W.2d 115, 132 (Iowa 2001). Willful disobedience "requires evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Ervin v. Iowa Dist. Ct.*, 495 N.W.2d 742, 744 (Iowa 1993) (citation omitted). Because contempt actions are quasi-criminal, willful disobedience must be shown beyond a reasonable doubt. *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007).

Failure to follow a court order "is not willful" if the order is indefinite. *Id.* Indeed, to support a finding of contempt, the order violated must be "definite," "clear and unambiguous," and "express rather than implied." *City of Dubuque v. Iowa Dist. Ct.*, 725 N.W.2d 449, 453 (Iowa 2006) (citation omitted).

Applying these principles here, we find no reason to interfere with the district court's ruling. Two learned district judges have disagreed about whether the "additional parenting time" provision in Exhibit D is mandatory or, instead, merely aspirational advice. The contempt court found it was merely aspirational because, among other things, (1) the decree only mentioned Exhibit D "in [its] analysis portion"; (2) the decree described Exhibit D as something that "should be useful in resolving . . . future disputes"—not as a set of commands; and (3) unlike Exhibits A, B, and C, Exhibit D was never incorporated into the "order/judgment portion" of the decree.[4] In light of these concerns, the contempt court was not obligated to find that Exhibit D contained judicial commands that were so "definite," "clear and unambiguous," and "express" that Peterson's noncompliance amounted to willful disobedience beyond a reasonable doubt. *See id.* The court's refusal to find contempt was not an abuse of discretion.

We affirm dismissal of Wendt's contempt claims. And we decline Wendt's request for attorney fees under Iowa Code section 600B.37A.

**AFFIRMED.**

Greer, J. and Danilson, S.J., concur specially.

---

[4] We need not and do not decide whether the contempt court's analysis was correct.

**GREER, Judge** (concurring specially).

I specially concur. I agree with the well-written opinion of the majority, but I would go a step further. To find Mahanaim Peterson in contempt, Bradley Wendt had to prove that Peterson willfully violated a court order. *See Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007) ("A party alleging contempt has the burden to prove the contemner had [(1)] a duty to obey a court order and [(2)] willfully failed to perform that duty."). Both parties articulate a resolution of this core issue of contempt turns on if Exhibit D—"General Rules Applicable to Parenting Time"—is mandatory or aspirational. So I would accept Wendt's invitation[5] to resolve that ambiguity that exists between the contempt court ruling and the findings of the declaratory judgment court.[6] The declaratory judgment court concluded the "rules" were mandatory under the decree. The contempt court, pointing to his regular use of the exhibit, determined the "rules" were only to be guidelines for co-parenting. More importantly, I would resolve which interpretation is correct because it does influence the ultimate issue and outcome.

Without disrespect to either learned trial judge, the rulings present a dilemma. But cases have considered it an "advantage" when the original judge is available to interpret the court's words and intent. For example, in *In re Estate of Cooper*, a controlling issue involved a determination of how the decedent's interests in the endowments were affected by the decree. 215 N.W.2d 259, 260–

---

[5] Wendt urges "whether compliance with the provision [in Exhibit D] was mandatory" went to the "ultimate issue"—whether Peterson violated a court order.
[6] I refer to the judge deciding the declaratory judgment action as the "declaratory judgment court." The judge deciding the rule to show cause matter is denoted as the "contempt court," but he also was the trial judge who authored the custody decree.

61 (Iowa 1974). Because the trial judge interpreting the decree was the one who originally entered it, his interpretation was given great weight. *Id.* And "substantial weight" was provided to the original judge's interpretation of provisions of a divorce decree in a later case. *See Serrano v. Hendricks*, 400 N.W.2d 77, 79 (Iowa Ct. App. 1986). Conversely, where a trial judge, who is not the original author, interprets the decree, that interpretation "lacks an advantage" and is not entitled to "great weight." *See In re Marriage of Gibson*, 320 N.W.2d 822, 823 (Iowa 1982). So here, I would afford the contempt judge's determination substantial weight, and I would find Exhibit D was a listing of aspirational methods of co-parenting and not mandatory requirements under the decree. Because our review from an appeal of an order for rule to show cause is for an abuse of discretion, we review the contempt court's sound reasoning.

> The undersigned has used this language for years in family law cases to aid the parties in how to handle themselves in routine disputes. The court specifically states it "should be useful in resolving many of the parties' future disputes." It is labeled as "General Rules." . . . The court DOES NOT believe it is part of the substantive court ruling. Reference to Exhibit D is in the analysis portion of the decision only. In the order portion of the court's ruling it is never mentioned, nor is it referred to as incorporated into the ruling. In the order/judgment portion of the court ruling the court does specifically mention Exhibit A (visitation), Exhibit B (noncovered medical expenses) and Exhibit C (child support worksheet) and incorporates each one as part of the court's ruling. The court NEVER incorporates Exhibit D into the order/judgment portion of the ruling on visitation. So while the burden of proof has not been sustained, the court also does not believe Exhibit D is a court order for purposes of contempt proceedings.
>       It is not a violation of a court order for additional parenting time requests to be denied.

I find nothing in the reasoning of the contempt court to justify a finding of abuse of discretion. I find nothing in this record to require a contempt finding.

In the end, I recognize that treatment of Exhibit D was not clear between at least two trial judges. I also recognize that treatment of Exhibit D was not clear to these parents. And, now with the parties facing two orders with polar opposite treatment of Exhibit D, our best course is to clear the ambiguity, affirm the dismissal of the contempt action, and ask these parents to review the aspirational guidance of Exhibit D for the sake of their child. No one is winning here.

**DANILSON, Senior Judge** (concurring specially).

I concur in the result but would add that without a reference to incorporation, Exhibit D may not be enforced by the court's contempt powers. If a stipulation or attachment to a decree is incorporated by reference, it is subsumed into the decree as if set out verbatim. *Bowman v. Bennett*, 250 N.W.2d 47, 50 (Iowa 1977). The rights of the parties are those imposed by the decree, not any separate attachment or agreement not incorporated by reference. *Id.* No magic language is necessary, but the decree must be "definite and certain" particularly as it relates to contempt proceedings. *Lynch v. Uhlenhopp*, 78 N.W.2d 491, 494 (Iowa 1956). Even as it relates to contracts, a "clear and specific reference is required to incorporate an extrinsic document by reference." *Hoffmeyer v. Iowa Dist. Ct.*, 640 N.W.2d 225, 228 (Iowa 2001). As the majority notes, Exhibit D was only mentioned and observed to be "useful," but it was not incorporated by reference into the decree. Under these facts, the district court correctly observed it lacked authority to entertain Wendt's contempt claims.