**UNITED STATES of America,**
*Plaintiff-Appellee,*

v.

**Walter Trice McKINLEY, Defendant-Appellant.**

**No. 73–2882.**

United States Court of Appeals,
Fifth Circuit.

April 29, 1974.

Rehearing Denied May 29, 1974.

Barry Hess, Mobile, Ala., for defendant-appellant.

Charles White-Spunner, U. S. Atty., Irwin W. Coleman, Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before GEWIN, GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Walter Trice McKinley was indicted for violating 21 U.S.C. § 841(a)(1) by possessing a Schedule I controlled substance (heroin) with intent to distribute it. His defense was entrapment. On this appeal from his conviction, McKinley makes two arguments for reversal: (1) the limits placed upon his cross-examination of the government's primary witness deprived him of an effective cross-examination and (2) the lower court abused its discretion in not granting a mistrial after an improper statement by the same witness incurably prejudiced him. We affirm.

McKinley admitted that he procured heroin for Sam Battles,[1] an individual who, it later developed, was cooperating with the government at the time. McKinley's sole defense was that he was entrapped into making the sale. Generally, his version of what occurred was that Battles, an acquaintance of some ten years, contacted him and asked him to obtain some heroin for a "sick cousin" from Pineville, Alabama. Battles' persistent pleas for compassion overcame McKinley's reluctance, and his hu-

manitarian instincts caused him to agree to act as procuring agent. He then obtained the heroin from one Catherine Douglas, transferred it to Battles, and subsequently, remitted money obtained from Battles to Ms. Douglas. The McKinley-Battles "connection" occurred at Battles' service station near Mobile. At the trial undercover agent Claude Smith of the Bureau of Narcotics and Dangerous Drugs (BNDD) testified for the government. Smith had posed as Battles' sick cousin and was present at the service station when McKinley delivered the heroin to Battles. On direct examination Agent Smith testified mainly as to how this transaction occurred. On redirect on the crucial entrapment defense issue of predisposition,[2] Agent Smith testified that two Mobile police officers and one Pritchard, Alabama police officer told him that McKinley was "one of the sources in Mobile who was selling narcotics of various types."[3] McKinley took the stand in his own behalf and admitted being convicted in 1965 of possession of marijuana, but denied ever being involved in selling drugs. After admitting he obtained the heroin for Battles' "sick cousin" and describing the events at the service station, he stated that his only incentive had been to act as a "good Samaritan." In rebuttal Ralph Jordan, a city detective with the Mobile police department, testified that he had information from confidential informants that McKinley was "one of the major dealers in narcotics in the City of Mobile." Additionally, a deputy sheriff with the Mobile County Sheriff's Department and a detective with the Pritchard Police Department testified that they had received information that McKinley was selling heroin during the period leading up to the transaction for which he was on trial.

1. Battles was dead by trial time, shot, apparently from ambush, with a high-powered rifle. The jury, however, was not told of the circumstances of Battle's death.

2. *See* United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), reaf-

firming the majority opinion in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

3. Hearsay reputation evidence is admissible to prove predisposition in an entrapment case. *See, infra,* p. 552.

## I.

■ McKinley argues that the trial court denied him his sixth amendment right to effective cross-examination when it would not allow him to ask Agent Smith where he lived, what aliases he had used in other drug investigations, and how long he remained in Mobile after this incident. He relies on Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); and Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). The government objected to disclosing Smith's address on grounds of relevancy and materiality, stating: "[i]t [Smith's address] is immaterial and irrelevant in view of the nature of the witness' occupation. His residence is totally immaterial and should not be a matter of public scrunity (sic)." In reference to disclosing aliases used in other cases, the government objected on grounds of relevancy, concluding with "to allow [counsel] to fully discover any and everything this man has done in all drug investigations is totally irrelevant and prejudicial to the United States."

■■ In Alford v. United States, *supra*, a mail fraud case, a former employee of the accused gave "damaging testimony" on direct examination. On cross-examination after a materiality objection by the government, the trial judge refused to let the defendant ask this witness where he lived. The Supreme Court stated in reversing, that "it is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to *place the witness in his proper setting and put the weight of his testimony and his credibility to a test*, without which the jury cannot fairly appraise them." (Emphasis added) 218 U.S. at 692, 51 S.Ct. at 219, 75 L.Ed. at 628 (1931). In Smith v. Illinois, *supra*,[4] the question of guilt or innocence hinged upon a credibility choice between the accused and the principal state witness, who was testifying under an assumed name. The Court there held that the trial court's failure to require divulgence of the witness's real name and home address deprived the accused of the right to effective cross-examination included within the sixth amendment's confrontation clause. In both *Smith* and *Alford* the Court recognized that the trial judge can compromise this right in order to protect a witness from "questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate [the witness]." The protection of the witness from physical harm is included within these categories. *See* Smith v. Illinois, *supra* (White, J., concurring); and United States v. Alston, 460 F.2d 48 (5th Cir. 1972) and cases cited therein.

■ *Smith* and *Alford* require as a constitutional minimum that a defendant be given an opportunity to place the prosecution's witnesses in their proper setting and test the weight of their testimony and their credibility before the jury. However, once a defendant has been accorded this basic constitutional right, the outer parameters of his cross-examination are committed to the sound discretion of the trial judge. *See* C. Wright and A. Miller, Federal Practice & Procedure, § 416.

The government first argues that solicitude for Agent Smith's safety justified not allowing McKinley to elicit his address on cross-examination. This argument raises the issue of whether the vaguely worded objection to the divulgence of Smith's address would be sufficient to restrict what otherwise would be a constitutional right on this ground. *See, e. g.,* Alston v. United States, *supra*; United States v. Varelli, 407 F.2d 735, 750–751 (7th Cir. 1969); and United States v. Persico, 425 F.2d 1375 (2d Cir. 1970). However, we pretermit de-

---

4. The Sixth Amendment confrontation clause applies to state trials. Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L. Ed.2d 923 (1965).

ciding this issue because of our disposition of the threshold issue of whether McKinley was denied an effective cross-examination.

In *Alford, Smith,* and Alston v. United States, the testimony of the witness sought to be cross-examined was either crucial to the government's case (*Smith* and *Alston*); or at least extremely damaging to the accused (*Alford*). Thus, the credibility of the witnesses was, of necessity, a major issue in the trial of vital importance to each defendant. The instant case is altogether different. Under well established fifth circuit principles, by asserting the defense of entrapment, McKinley admitted the acts charged. *See, e. g.,* United States v. Newcomb, 488 F.2d 190 (5th Cir. 1974), United States v. Williamson, 482 F.2d 508 (5th Cir. 1973), and the cases cited therein. Most of Agent Smith's testimony consisted of describing the commission of the crime, *i. e.,* the transaction between McKinley and Battles which Smith witnessed and which McKinley freely admitted on the stand. Although Smith's version of what transpired differed slightly from McKinley's, this difference was not of significance. The real issue in the case was whether Sam Battles induced McKinley into committing a crime he was otherwise not predisposed to commit. Agent Smith was not privy to Battles' conversations with McKinley and did not testify as to their substance. Thus, the credibility of Agent Smith was only marginally at issue in this case.[5]

Additionally, McKinley was allowed to place Agent Smith in his proper setting before the jury. Smith was not an informer of unknown background but was a full-time salaried employee of the Justice Department. McKinley was allowed to discover his true name, his age, occupation, length and grade level of employ-

ment, his supervisor's name, the exact location of his office, the names of other BNDD agents working on the Mobile Task Force, the date the Task Force came to Mobile, the date Smith began working on this case, and the aliases he had used while working on this case.

Under these circumstances, the refusal to allow McKinley to inquire as to Smith's residence and other aliases did not thwart effective cross-examination. Given the minimal weight of Agent Smith's testimony in resolving the issue of predisposition, the fact that his credibility was only tangentially put in issue, and the extensive background information which was elicited from him about his proper setting; we hold that McKinley was not denied his sixth amendment right to an effective cross-examination and that the trial judge was within his discretion in not allowing McKinley's counsel to ask the proposed questions.[6] *See* United States v. Twomey, 460 F.2d 400 (7th Cir. 1972); United States v. Teller, 412 F.2d 374, 379–380 (7th Cir. 1969), cert. denied, 402 U.S. 949, 91 S.Ct. 1603, 29 L.Ed.2d 118 (1971); United States v. Lawler, 413 F.2d 622, 627 (7th Cir.), cert. denied, 396 U.S. 1046, 90 S.Ct. 698, 24 L.Ed.2d 691 (1969); and United States v. Lee, 413 F.2d 910, 915 (7th Cir.), cert. denied, 396 U.S. 1022, 90 S.Ct. 595, 24 L. Ed.2d 515 (1969).

II

McKinley also argues that the trial court abused its discretion in not granting his motion for a mistrial after an unresponsive interjection by Agent Smith on redirect incurably prejudiced his defense. These events developed in the following manner. On cross-examination counsel for McKinley asked Agent Smith if Battles had given McKinley any marked money. After an af-

---

5. This fringe involved Smith's cumulative testimony as to what some officers had told him about McKinley's reputation for dealing in drugs.

6. Our ultimate holding on this issue is fully maintainable on another ground. Even if the restrictions placed upon the cross-exami-

nation of Agent Smith amounted to error of constitutional dimensions, such error was "harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1969); and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

firmative answer, counsel then asked if this marked money was "later recovered from the defendant." Smith's response was that he did not *"think* any money was recovered." On redirect, the government, brought out the fact that McKinley's arrest occurred five months after the incident. Then the following question was asked. "Do you *know* whether any money was recovered from the defendant at that time?" Smith's response was, "No, I don't know if there was any money. *I know some narcotics were recovered."* Defense counsel then moved to strike Smith's answer. The court granted this motion and the jury was instructed to disregard the italicized portion of Smith's statement. After securing this relief, McKinley moved for a mistrial on the basis that striking the statement and instructing the jury to disregard it, as he had requested, was really not the proper remedy.

■■ When a defendant asserts the defense of entrapment hearsay reputation evidence is admissible to prove his predisposition to commit the crime. *See, e. g.,* United States v. Simon, 488 F.2d 133 (5th Cir. 1973), and United States v. Stills, 476 F.2d 592 (5th Cir. 1973). Whether this would include hearsay testimony as to subsequent specific acts (possessing narcotics at the time of arrest) is a question we need not decide. Nor, need we decide whether the prejudice created by Smith's statement was cured by the cautionary instruction granted at McKinley's request.[7] It is unnecessary to reach these points, because we are convinced that interjection of this statement into the context of this trial was harmless error under Fed.R.Crim.P. 52(a).

At the outset, we carefully scrutinized the record for any intimation that the statement was purposefully interjected by the government. Defense counsel's line of questioning appears to be aimed at raising the inference in the jury's mind that since no marked money was recovered at the time of McKinley's arrest, then McKinley might have transferred the money to Catherine Douglas, as he stated. It was perfectly proper for the government to point out on redirect that the arrest occurred five months after McKinley was given the money and that, in any event, Smith *did not know* whether any money was recovered. Smith's supplemental statement was entirely unresponsive. In these circumstances, given the propriety of the line of questioning, we can perceive no question of prosecutorial bad faith.

The objectionable statement was merely cumulative of other evidence that was eventually properly placed before the jury. After the jury had heard a Mobile city detective testify that McKinley was "one of the major dealers in narcotics in the City of Mobile," and had listened to a Mobile deputy sheriff and a Pritchard detective state that McKinley had been engaged in selling heroin, the single statement that narcotics were recovered from McKinley when he was arrested paled into insignificance. This probable lack of prejudice was reinforced by the court's prompt action in instructing the jury to disregard the unresponsive comment. The strong proof of widespread narcotics activity, which went into the record without objection, rendered the possibility that Smith's comment prejudiced the question of predisposition gossamer indeed. Additionally, Agent Smith testified on redirect as to what he had heard about McKinley's reputation for dealing in drugs, and the jury was made aware of McKinley's prior marijuana conviction. In view of all of the testimony in the record, we hold that the interjection of this isolated statement into this case did not have a "substantial influence" on the jury. *See* Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), and United States v. Steinkoenig, 487 F.2d 225 (5th Cir. 1973).

Affirmed.

---

7. *See, e. g.,* Odom v. United States, 377 F.2d 853 (5th Cir. 1967); and McMillan v. United States, 363 F.2d 165 (5th Cir. 1969).