STATE of Iowa, Appellee,

v.

Phillip Benito CUEVAS, Appellant.

No. 61947.

Supreme Court of Iowa.

July 25, 1979.

Philip F. Miller, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Thomas A. Evans, Jr., Asst. Atty. Gen., and James W. Ramey, Asst. Polk County Atty., for appellee,

Considered by REYNOLDSON, C. J., and UHLENHOPP, McCORMICK, McGIVERIN, and LARSON, JJ.

REYNOLDSON, C. J.

On January 1, 1977, George Weeks was found shot to death outside his Des Moines home. After several months of investigation the State filed a murder charge against defendant Cuevas. Following jury trial defendant was convicted of first-degree murder, sections 690.1–.2, The Code 1977. He now appeals from judgment sentencing him to life imprisonment. We reverse and remand for new trial.

From the evidence the jury could have found the following facts. On the evening of December 31, 1976, defendant, his wife Mary, and Peter Miover went out in the Cuevas car to burglarize a home. They abandoned their first target when someone in the house turned off a light. Defendant proposed another home, saying Weeks, the occupant, liked to keep hundred dollar bills in his bib overalls. Defendant and Miover approached the house on foot, wearing stocking masks and gloves. Defendant was armed with a .380 Llama pistol. Miover carried a sawed-off shotgun belonging to defendant.

According to plan, defendant jerked open a screen door. Miover threw himself at the interior wooden door, but was unable to break it and fell dazed to the ground. Apparently Weeks came to the door and was shot once in the head by defendant.

Defendant and Mary took Miover back to his hotel and told him to keep quiet. They spent the remainder of the night at Sandra See's residence.

The jury could have found the murder weapon was initially purchased by Edward J. Thomas who sold it and a .22 Ruger pistol to Rod McBlaine within the year prior to Weeks' death. Both guns were stolen from McBlaine four months before this homicide. The evidence put defendant in possession of the Ruger in December, 1976, and the Llama two weeks after Weeks was killed.

Miover testified that as he lay collapsed on the ground after his unsuccessful encounter with Weeks' door he heard a shot and saw defendant running back toward the car. He did not see Weeks nor was he able to detail the circumstances further. After he had "hobbled" to the auto he heard Cuevas tell Mary, "I had to shoot him." On cross-examination Miover, for the first time and contrary to his prior statements, testified he returned to the crime scene later the same night, determined Weeks was dead, and took some money and clothes from the house.

Defendant's brief raises issues which we treat in divisions one through ten. Our eleventh division relates to printing costs.

I. *Did preaccusatorial delay deny defendant due process and a fair trial?*

Defendant became a suspect on January 17, 1977, when ballistics tests established the Llama pistol found in his possession during an unrelated arrest was the weapon used to kill Weeks. The State did not file a preliminary information against defendant until October 14. A county attorney's information was filed November 1.

October 25, defendant moved to dismiss, alleging the "delay of 8½ months constitutes prejudicial preaccusatortorial [*sic*] delay contrary to Defendant's right to a fair trial and due process of law." No other facts were alleged. The motion was unsupported by affidavit. The hearing on the motion was unreported. From the ruling denying the motion we assume defendant

was contending an alibi witness died during the delay, and another had become hostile. The State apparently produced testimony it had insufficient evidence to support a charge until October 14, 1977, when a detective obtained information from Miover.

Of course the statute of limitations, "the primary guarantee against bringing overly stale criminal charges," *United States v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627, 632 (1966), did not prohibit this prosecution. *See* § 752.1, The Code 1977 (no limitation in murder prosecution).

■ The due process clause, U.S.Const. amend. V, invokes dismissal "if it were shown at trial that the pre-indictment delay . . . caused substantial prejudice to [defendant's] rights to a fair trial *and* that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468, 481 (1971) (emphasis added). *See also United States v. Lovasco*, 431 U.S. 783, 789–90, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752, 758–59 (1977); *State v. Williams*, 264 N.W.2d 779, 782–84 (Iowa 1978); *State v. Davis*, 259 N.W.2d 843, 845 (Iowa 1977), *cert. denied*, 435 U.S. 973, 98 S.Ct. 1618, 56 L.Ed.2d 66 (1978); *see generally*, Note, *Preindictment Delay in the Eighth Circuit*, 27 Drake L.Rev. 110 (1977–78).

■ Defendant has not satisfied the "intentional delay" prong of the *Marion* test. Trial court properly relied on the *Lovasco* rationale:

[P]rosecutors do not deviate from "fundamental conceptions of justice" when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. . . . From the perspective of potential defendants, requiring prosecutions to commence when probable cause is established is undesirable because it would increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried. These costs are by no means insubstantial

. . . .

. . . . .

We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.

431 U.S. at 790–96, 97 S.Ct. at 2049–52, 52 L.Ed.2d at 759–63 (citations and footnotes omitted). *Accord, State v. Schlick*, 257 N.W.2d 59, 61 (Iowa 1977).

In the case before us defendant has established nothing more than permissible "investigative" delay. Trial court did not err in overruling the motion to dismiss.

II. *Did trial court err in refusing to instruct on second-degree murder and manslaughter?*

Trial court instructed the jury only on felony-murder. Although the instruction did not comply with our decisions because it did not require the jury to find a *murder* committed in the perpetration of a felony, *see State v. Galloway*, 275 N.W.2d 736, 738 (Iowa 1979), defendant posits no objections on this omission. Nonetheless, it complicates the issue before us. The new statute, section 707.2, The Code 1979, of course does not apply to this situation.

Defendant timely requested the court to instruct on second-degree murder and manslaughter. This was refused, as was defendant's request to instruct on first-degree murder in addition to felony-murder.

On two recent occasions we have been required to reverse felony-murder convictions for failure to submit second-degree murder and manslaughter as lesser included offenses. *State v. Reese*, 259 N.W.2d 771, 777–79 (Iowa 1977); *State v. Millspaugh*, 257 N.W.2d 513, 516 (Iowa 1977). Both crimes satisfy the legal test as lesser included offenses of first-degree murder. *Id.*

The State argues there was no factual basis in the record to justify submitting either included offense. It asserts if Miover is not believed defendant should be acquitted as "the only evidence put forth at trial was the fact that Cuevas shot the victim, with malice aforethought, in the attempted perpetration of a burglary."

But there is no direct evidence, from Miover's testimony or elsewhere, of defendant's intent. The jury had to infer an intentional killing (they were not instructed they had to find malice aforethought) from defendant's use of a deadly weapon in the robbery, see *State v. Pepples*, 250 N.W.2d 390, 395 (Iowa 1977), and from Miover's testimony that defendant said, "I had to shoot him." While unlikely, the jury could have found defendant shot Weeks during a burglary without finding the shooting was intentional. So finding, the jury could not have convicted defendant of first-degree murder. Or it could have disbelieved Miover's testimony concerning the purpose of going to Weeks' house while still finding defendant unintentionally shot Weeks.

The case State relies on, *State v. Conner*, 241 N.W.2d 447 (Iowa 1976), is factually distinguishable. Conner participated in the rape and shotgun murder of a young girl. There was no factual issue on intent; Conner either participated in a premeditated murder or he did not.

We find under the felony-murder instruction given, manslaughter was a lesser included offense and should have been submitted. On retrial there should be given an approved instruction on felony-murder. Assuming a similar record, second-degree murder would be included and should be submitted.

We are not persuaded by defendant's claim the court should have submitted a "straight" first-degree murder instruction. The State never varied from its theory that defendant shot Weeks in the course of an attempted burglary and larceny. *Cf. State v. Fuhrmann*, 257 N.W.2d 619, 626 (Iowa 1977) (trial court required to submit felony-murder and first-degree murder because of

State's alternate theories). Here virtually all evidence of the burglary came from Miover's testimony. If the jury disbelieved him on the burglary plan, there was insufficient evidence from which the jury could have inferred a willful, deliberate and premeditated killing.

The failure to instruct on the lesser offenses necessitates a reversal. We discuss the remaining issues defendant raises only to the extent the problems may recur on retrial.

III. *Did the State corroborate the testimony of defendant's accomplice?*

Defendant contends he was convicted on the uncorroborated testimony of Miover, a conceded accomplice, in violation of section 782.5, The Code:

A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof.

See *State v. King*, 256 N.W.2d 1, 9–10 (Iowa 1977); *State v. Willman*, 244 N.W.2d 314 (Iowa 1976).

Here defendant's possession of the murder weapon two weeks after the homicide, his inconsistent explanations for such possession offered to the police, and his pre-homicide possession of another weapon stolen contemporaneously with the Llama provided sufficient corroborative evidence. Contrary to defendant's argument, it is not necessary that there be corroborative evidence relating to all elements material to the commission of the crime. The test for trial court is whether it fairly can be said the accomplice is corroborated in some material fact tending to connect defendant with the commission of the crime. *State v. Vesey*, 241 N.W.2d 888, 890 (Iowa 1976). Whether the corroborative evidence is sufficient to convict the defendant is for the jury. *Willman*, 244 N.W.2d at 315.

IV. *Did trial court err in admitting evidence of the theft of the murder weapon and defendant's pre-homicide possession of another weapon stolen at the same time?*

Defendant asserts some of the corroborative evidence should have been excluded because it constituted proof of other crimes committed by him. His pretrial limine motion asked that the State be barred from introducing evidence concerning his prior arrests, or conviction, or alleged criminal offenses of possession of stolen guns or carrying a concealed weapon "for same is incompetent, irrelevant and immaterial and is prohibited in general as proof of other criminal offenses." This motion, because it requested and ultimately produced a ruling as to what was admissible and what was not, preserved any error. *See State v. O'Connell*, 275 N.W.2d 197, 202 (Iowa 1979). The motion was overruled but defendant did secure a pretrial ruling which excluded his arrest and conviction on the 1977 concealed weapon charge.

Defendant relies on *State v. Zuch*, 267 N.W.2d 52, 54 (Iowa 1978), in which this portion of *State v. Fetters*, 202 N.W.2d 84, 92 (Iowa 1972), is quoted: "[T]he other offenses . . . must . . . be reasonably similar to the act on which the prosecution is based." He asserts the testimony relating to theft of the guns relates to a dissimilar crime and is inadmissible under the rule of these cases.

The State first argues no evidence of other criminal acts was admitted: It never attempted to prove defendant or Miover stole the guns, and the jury was not required to infer that to convict defendant of murder. The State alternatively contends the evidence was relevant to identify defendant as the person who shot Weeks. Nonetheless, testimony concerning theft of the guns and defendant's subsequent possession of them arguably invokes the general rule excluding evidence of other crimes.

■ The question is whether one of the exceptions to the general rule applies. The State's theory at trial and here is that the evidence in issue excluded McBlaine (from whom the guns were stolen) as the perpetrator of the homicide and corroborated Miover's testimony placing the murder weapon in defendant's possession before and during the shooting. We hold the evidence was relevant in determining the identity of the person committing the crime, one of the established exceptions.

It is true that language in several of our decisions may be construed to limit applicability of the exceptions to the exclusionary rule, including identity, to criminal acts which are "reasonably similar to the act on which the prosecution is based." *See, e. g., State v. Thomas*, 275 N.W.2d 211, 215 (Iowa 1979); *O'Connell*, 275 N.W.2d at 202.

However, no such apparent limitation has appeared in other cases, and on several occasions the court has examined the relevancy of evidence of dissimilar crimes. *See, e. g., State v. Gartin*, 271 N.W.2d 902, 912 (Iowa 1978) (evidence from which jury could find defendant had knowledge of car theft ring admissible as direct evidence of perjury); *State v. McDaniel*, 265 N.W.2d 917, 921 (Iowa 1978) (evidence of sexual relations occurring when defendant delivered drugs to friend admissible as negating mistake or accident); *State v. Fryer*, 243 N.W.2d 1, 6 (Iowa 1976) (evidence of rape committed by defendant after four murders was relevant to motive and made defendant a principal even if jury found he killed no one); *Coleman v. State*, 222 N.W.2d 497, 499 (Iowa 1974) (evidence of rape committed after defendant commandeered victim's automobile was admissible on robbery prosecution on issue of motive); *State v. Lyons*, 210 N.W.2d 543, 546 (Iowa 1973) (defendant's request to engage in sexual intercourse with victim admissible in robbery prosecution as inseparable part of transaction); *State v. Wilson*, 173 N.W.2d 563, 566–67 (Iowa 1970) (possession of weapons was admissible in prosecution for uttering forged instrument when defendant threatened use of force after forgery was detected); *State v. Dunne*, 234 Iowa 1185, 1195–96, 15 N.W.2d 296, 301–02 (1944) (evidence of defendant's theft of murder weapon admissible on issue of identity and intent).

Other decisions resolving evidentiary questions of other crimes contain no lan-

guage limiting the exceptions to similar crimes. *See, e. g., State v. Gambell*, 262 N.W.2d 792, 796–97 (Iowa 1978); *State v. Holbrook*, 261 N.W.2d 480, 481 (Iowa 1978); *State v. Reese*, 259 N.W.2d at 775; *State v. Powell*, 256 N.W.2d 235, 237 (Iowa 1977); *State v. Terrill*, 241 N.W.2d 16, 20 (Iowa 1976).

■ Our language which may be interpreted to require that the other offenses must be similar to the crime charged in order to be admissible traces to *Fetters*, 202 N.W.2d at 91–92, and *State v. Hopkins*, 192 N.W.2d 747, 748 (Iowa 1971). In both *Fetters* and *Hopkins* there was an attempt to show absence of mistake or accident, or motive or intent by showing defendant's participation in *similar* criminal conduct on other occasions. *Accord, McCormick's Handbook of the Law of Evidence* § 190(5) at 450 (2d ed. E. Cleary 1972); 2 J. Wigmore, *Evidence in Trials at Common Law* §§ 200–73 (3d ed. 1940). The other offense must be reasonably similar to the crime charged only when similarity is essential to establish the relevancy of the evidence under the exception relied on.

Relevancy of the other offense is the *sine qua non* of its admissibility into evidence:

The basic standard by which other crimes evidence is tested is relevancy. However, even when such evidence has some relevancy the trial court must exercise discretion to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

*State v. McDaniel*, 265 N.W.2d at 921 (citations omitted). In the final analysis *Zuch* simply held the fact a car was stolen sometime prior to the robbery was not relevant to that defendant's intent to commit the latter crime. 267 N.W.2d at 55.

We hold the evidence relating to the ownership and theft of the guns was admissible.

V. *Did trial court err in admitting an uncertified secondary copy of a firearms record?*

Through the testimony of Thomas, the original purchaser of the murder weapon, the State sought to identify, and then successfully introduced into evidence, an uncertified, poor quality xerox copy of what appeared to be a Department of Treasury firearms transaction record. Apparently Thomas had signed the original. The instrument carried the serial number of the Llama pistol.

Defendant objected on the grounds Exhibit 13 was neither the original nor the best evidence, that no proper foundation was laid, and that no showing was made as to who made the record, in whose possession it had been, who was the custodian of it, or that it was made in the ordinary course of business.

On appeal defendant relies on *State v. McConnell*, 178 N.W.2d 386, 388–89 (Iowa 1970), in which we held a sheriff could not supply the necessary foundation for what purported to be an uncertified copy of McConnell's driver's license. Although the copy apparently had been kept in the sheriff's office, the sheriff was not an official custodian of such records.

The State argues Exhibit 13 was not prejudicial because it was merely cumulative of other evidence properly admitted at trial.

■ "It is the general rule the original of a document by which proof of a material fact is to be made must be introduced unless satisfactory explanation for its absence is made." *State v. Moline*, 164 N.W.2d 151, 156 (Iowa 1969). Section 622.43, The Code, modifies the best evidence rule by putting on the same level as originals the "[d]uly certified copies of all records and entries or papers belonging to any public office, or by authority of law filed to be kept therein." If a copy is not certified, the best evidence rule applies. *McConnell*, 178 N.W.2d at 389.

■ In absence of any explanation for reliance on a copy, Exhibit 13 should not have been admitted. *Id.* at 388–39; *State v. Johnson*, 222 N.W.2d 483, 486 (Iowa 1974). We need not pass on the question whether the evidence was cumulative and

not prejudicial because we assume this incident will not recur on retrial.

## VI. Did trial court err in prohibiting cross-examination of the accomplice as to certain prior felonies?

The State's key witness, accomplice Miover, had four prior felony convictions: operating a motor vehicle without the owner's consent in 1959, larceny of a motor vehicle in 1961, breaking and entering in 1974, and carrying a concealed weapon in 1977.

Trial court ruled Miover could be examined only on the 1974 felony. Defendant asserts he should have been able to inquire into the two earlier felony convictions. He further argues our rule on impeachment by prior felony conviction should not apply to witnesses other than an accused.

▮ Section 622.17, The Code, permits interrogation of a "witness" as to a previous conviction of a felony, not merely an accused. Our implementing rules laid down in *State v. Martin*, 217 N.W.2d 536, 542 (Iowa 1974), were fashioned to control such impeachment of any person testifying. In *State v. Brewer*, 247 N.W.2d 205, 213 (Iowa 1976), we summarily rejected a request to limit the protections of *Martin* to persons accused.

Thus far we have fixed no specific period of years as a yardstick for measuring whether a witness' felony conviction is admissible for impeachment. *State v. Jones*, 271 N.W.2d 761, 766 (Iowa 1978) (no abuse of discretion in permitting use of an eight-year-old perjury conviction); *State v. Miller*, 229 N.W.2d 762, 769–70 (Iowa 1975) (no abuse of discretion in permitting use of three 11-year-old convictions); *State v. Thornburgh*, 220 N.W.2d 579, 583–84 (Iowa 1974) (fourteen-year-old conviction held too remote).

▮ The convictions at issue here were at least sixteen and eighteen years old. Although subsequent convictions militate against the effect of their age, *Jones*, 271 N.W.2d at 766, we hold trial court did not abuse its discretion in determining the prejudicial effect of these felony convictions outweighed their probative value.

## VII. Did trial court err in prohibiting cross-examination of the accomplice as to his current address?

▮ On his direct examination Miover testified that for security reasons he had been staying in different motels, under assumed names, at state expense. On cross-examination defense counsel was not permitted to ask Miover where he was then staying. When defendant sought to obtain the answer as an offer of proof in the jury's absence, the court declined to require an answer.

Ordinarily one has the right to cross-examine a witness concerning his address, occupation, and other routine matters. However, that right is not absolute and may be restricted to protect a witness from embarrassment, harassment, or threats to safety. *State v. Sheffey*, 250 N.W.2d 51, 55 (Iowa 1977).

Here the State made a sufficient showing that disclosure of Miover's current residence was dangerous. The evidence disclosed Miover's lodging and meals were provided by the State. Similar evidence, as well as his past addresses, may be admissible on retrial. However, assuming a showing of the same circumstances, trial court would not be in abuse of its discretion in making a similar prohibitory ruling on Miover's current address.

## VIII. Did trial court err in refusing to instruct jury that use of prior inconsistent statements is a common method of impeachment?

▮ On cross-examination, and contrary to all inferences in his prior statements, Miover admitted he returned to the Weeks home later that night and stole clothing and money.

Defendant requested trial court to instruct the jury pursuant to Uniform Jury Instruction 1:10 (impeachment-contradictory statements). Trial court refused, apparently finding no instance of prior inconsist-

ent statements. Of course the testimony elicited on cross-examination was contrary to his direct examination testimony that he was in his Franklin Hotel room the rest of the night. But more pivotal in this context, it was also at variance with the plain inference in his prior statements to the police and on deposition. Responding to questions about his activities following his return to the Franklin Hotel he merely said that he went to another person's residence the next day. We find Miover's prior out-of-court statements varied materially from his testimony on cross-examination.

For the purposes of this opinion we need not determine whether failure to give the requested instruction was reversible error where, as here, trial court gave the general instruction on credibility of witnesses. *See* Uniform Jury Instruction No. 105; *State v. Wright*, 274 N.W.2d 307, 311–14 (Iowa 1979); *Upton & Co. v. Paxton*, 72 Iowa 295, 300–01, 33 N.W. 773, 775–76 (1887). On retrial, assuming a similar record and request, trial court should give the more specific instruction.

IX. *Did trial court err in refusing to order pretrial production of a grand jury transcript?*

Before trial, defendant moved for production of the "entire grand jury transcript of testimony", alleging it to be necessary for his alibi defense. Trial court at first overruled the motion, but later sustained it as to the testimony of Frank and Sandra Goff. Defendant asserts refusal to provide the transcript of Sandra See's testimony was error.

Trial court stated the See transcript would, upon proper application, be provided after her direct examination. The court apparently reviewed the See testimony and provided defendant with a synopsis of arguably exculpatory testimony:

Her testimony at first was that Phil Cuevas came alone, stayed all night, left the next day. She later testified he came with Mary and they were in and out.

Her testimony was that she didn't see if Mr. Cuevas had a gun, he could have, she didn't see one.

None of these witnesses testified for either party. Defendant made no complaint until this appeal. He now contends his due process rights were violated by suppression of exculpatory evidence.

Ordinarily there is no constitutional right to discovery of a prosecution witness' prior statements. *Wardius v. Oregon*, 412 U.S. 470, 475–76, 93 S.Ct. 2208, 2212–13, 37 L.Ed.2d 82, 87–88 (1973); *United States v. Augenblick*, 393 U.S. 348, 356, 89 S.Ct. 528, 533–34, 21 L.Ed.2d 537, 545 (1969), and generally no constitutional right to discover alleged exculpatory evidence earlier in trial than the court permitted in this case. *See United States v. Flores*, 540 F.2d 432, 438 (9th Cir. 1976); *Williams v. Wolff*, 473 F.2d 1049, 1051–52 (8th Cir. 1973); *United States v. Randolph*, 456 F.2d 132, 136–37 (3rd Cir.), *cert. denied*, 408 U.S. 926, 92 S.Ct. 2507, 33 L.Ed.2d 337 (1972). Due process may be violated by suppression of material, exculpatory and specifically requested evidence, *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963), and by the prosecution's failure to *volunteer* exculpatory material which creates a reasonable doubt not otherwise existing. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Here defendant made no effort to show the See grand jury testimony was exculpatory. When the State rested without calling See as a witness, defendant neither requested the transcript nor called See as a defense witness. He made no post-trial motion to examine the transcript. *Cf. State v. Hall*, 235 N.W.2d 702, 731 (Iowa 1975). The transcript itself was inadmissible. In withholding it until after See's direct examination trial court had ample precedent in our cases which generally follow the procedures of the Jencks Act, 18 U.S.C. § 3500 (1970). *See State v. Deanda*, 218 N.W.2d 649, 651 (Iowa 1974); *State v. Houston*, 209 N.W.2d 42, 46 (Iowa 1973); *State v. Mayhew*, 170 N.W.2d 608, 614 (Iowa 1969). Of course the defendant

would have been entitled to a transcript of the grand jury testimony of a State's witness before cross-examining that witness. § 771.24, The Code; *Gartin*, 271 N.W.2d at 911; *Hall*, 235 N.W.2d at 715; *see also State v. Frommelt*, 159 N.W.2d 532, 536 (Iowa 1968). Here defendant was not denied that right. We find no error in trial court's pretrial ruling.

X. *Should a mistrial have been declared because of the effect of publicity on unsequestered jurors?*

Unfortunately, one juror during deliberations intentionally learned from a radio broadcast that defendant also had been charged with an unrelated murder. She informed other jurors she had heard something relevant to the case. Trial court responded to the jury's written inquiry concerning this incident by directing it to continue its deliberations. Defendant, who had complained throughout the trial concerning prejudicial publicity, moved for mistrial. The motion was overruled.

This issue should not recur during defendant's new trial and we need treat it no further here.

XI. *Are defendant's printing costs excessive?*

The record reflects that defendant is indigent and his appeal counsel was appointed by the trial court. Papers filed here carry a certificate of the following printing costs: appendix, 161 pages, $533.00 ($3.31 per page); appellant's brief, 24 pages, $104.00 ($4.33 per page); appellant's reply brief, 6 pages, $32.50 ($5.41 per page).

Our rule 102 governing procedure in the appeal of criminal cases provides in relevant part that "[a]ll procedure after the perfection of an appeal in a criminal case shall be governed by the rules of appellate procedure to the full extent not inconsistent with statute." Iowa R.App.P. 16(c) provides:

The amount actually paid for printing or otherwise producing necessary copies of briefs and the appendix or copies of records authorized by these rules, exclusive of stenographic expense, shall be certified by the attorney, and if reasonable, shall be taxed in the appellate court as costs.

This provision was formerly Iowa R.App.P. 344.2(c). In *Lucas v. Pioneer, Inc.*, 256 N.W.2d 167, 180 (Iowa 1977), pursuant to this rule, we limited taxable printing costs in that appeal and future appeals to actual cost not to exceed $3.00 per page.

We believe that holding should apply in criminal appeals to the extent not inconsistent with statutes. Section 814.21, The Code, provides a successful defendant on appeal shall recover the "cost of printing abstract and briefs (to a maximum of one dollar per page) to be paid by the county wherein the trial occurred." Section 815.7 provides that an attorney appointed to represent an accused shall receive reasonable compensation "and in the event of appeal the cost of . . . the printing of the trial record and necessary briefs in behalf of the defendant."

█ Where, as here, appeal counsel has been appointed by the court to represent defendant, section 815.7 applies. But we hold our rule 16(c) is also applicable and not inconsistent with the statute: The printing costs must be reasonable and under the *Pioneer* case cannot presently exceed the sum of $3.00 per page. We therefore direct that actual printing expense may be assessed as costs or reimbursed to defense counsel representing indigents in our appellate courts, but not to exceed the sum of $3.00 per page.

For the reasons stated in division II, this case is reversed and remanded for new trial.

REVERSED AND REMANDED.