**Allan Banks GIBB, III, Plaintiff,**

v.

**David R. HANSEN, as Judge of the District Court of Iowa in and for Story County, Defendant.**

**No. 63236.**

Supreme Court of Iowa.

Dec. 19, 1979.

Lad Grove, Ames, for plaintiff.

Thomas J. Miller, Atty. Gen., and Jeanine Freeman, Asst. Atty. Gen., for defendant.

Considered by LeGRAND, P. J., and REES, HARRIS, ALLBEE, and McGIVERIN, JJ.

McGIVERIN, Justice.

Plaintiff Allan Banks Gibb, III, challenges by way of petition for writ of certiorari the defendant district court's judgment of contempt entered against him. We believe the court acted legally and annul the writ.

Gibb presents the following issues for our review:

1. Whether a person accused of contempt committed before the court is provided adequate procedural safeguards under chapter 665, The Code 1977, sufficient to comply with Iowa Constitution article I, sections 9, 10, and 11;

2. Whether the court acted illegally in punishing Gibb for contempt without advising him of and providing him pursuant to section 665.7 with an opportunity to make written explanation of his conduct under oath; and

3. Whether a criminal case defendant has a right under Iowa Constitution article I, section 1, to refuse, after testifying on his own behalf, to answer a question within the proper scope of cross-examination which he claims would jeopardize the safety of himself and his family.

The contempt matter arose in this way. Gibb was on trial for three counts of delivery of cocaine for profit in violation of section 204.401(1)(a), The Code 1979. He took the witness stand before the jury in his own defense. On direct examination he testified that although he delivered cocaine, on the three different occasions charged, to a John Furman, he made no profit on any

of these deliveries. He said he gave the $700 he received from the first drug transaction and $1185 from the second "to the people" he "received the cocaine from." In the third transaction he delivered four ounces of cocaine and was to receive $9000 in exchange. For reasons not stated in the record, he did not receive that payment. However, he said he was to give these same people, who supplied him with the drug, the money he was to receive from the third delivery.

On cross-examination the prosecutor asked Gibb in several similar questions who gave him the cocaine that he delivered. Defense counsel objected on the grounds the questions were irrelevant, immaterial and beyond the scope of direct examination. The court properly overruled the objections. State v. Sparks, 238 N.W.2d 777 (Iowa 1976).

However, Gibb testified he could not answer the questions because he was afraid of retaliation against himself and his family.

The prosecution asked the court to direct Gibb to answer the question as to the identity of the people who gave him the cocaine at issue in that case. The court did so, but Gibb still refused to answer the question.

The trial was temporarily interrupted and, in the absence of the jury, the court commenced contempt proceedings against Gibb, advising him of the consequences of refusing to answer the question under the contempt law, chapter 665, The Code. The court explained that an illegal resistance to any order made or issued by the court constituted contempt under section 665.2(3). The penalties for contempt were also explained to Gibb. See § 665.4.

At the suggestion of the court, Gibb consulted with his attorney, who reviewed the code provisions pertaining to contempt proceedings. Gibb, thereafter, again refused to answer the question.

The court then asked Gibb's attorney if he desired to be heard on the issue of whether or not Gibb's conduct constituted contempt. After further study of the matter, the attorney advised the court that Gibb was in a difficult position in trying to protect the safety of himself and his parents. Relative to Gibb's refusal to answer, his attorney said, "It is a technical violation, yes, but one that has a very solid and very sound reason for it."

After listening to statements of both counsel, the court asked Gibb, "Mr. Gibb, do you desire to make any statement to this court concerning your action in refusing other than what you already made?" Gibb answered:

The only thing, Your Honor, is that it does put me in an very tough situation of whether to answer or not. So, I simply cannot. There are—it's not like there are one or two people. It's like a pyramid effect. People I don't even know. I simply can't name any of them for the reasons for the ones I don't know and the jeopardy of my family and myself for the ones that I do.

The court then found Gibb in contempt under section 665.2(3) for illegal resistance to the court's order by refusing to answer the pending question.

The court next asked Gibb if he had anything else to say before punishment for the contempt was determined. Gibb made no more record on the matter. Next, the court heard additionally from counsel for each side. Gibb was then sentenced to six months in jail under section 665.4(2). The court made these further comments:

Mr. Reporter, this Court would like to dictate into the record a couple of comments about this contempt proceeding. One is that this Court perceives a key element of this defendant's defense is whether or not he delivered the controlled substance alleged for the purpose of making a profit. His direct testimony was he took the money he received from Mr. Furman directly to his supplier. The clear inference to be drawn from that testimony was that it was a sale or exchange for the same amount of money. He gave the direct testimony that he did not profit on the transaction as well. But his refusal to identify the suppliers to him, so they could be summoned in here

by subpoena and examined concerning the sale transaction between them and him, he has effectively foreclosed the State from investigating the truth or falsity of his testimony concerning whether or not he did it for the purpose of making a profit because that goes to a very essential element of this case. This Court viewed his refusal to answer the question as a particularly burdensome one and it raised substantially in this Court's mind the importance attached to the refusal in the Court's mind sufficient to justify in this Court's mind the imposition of the maximum jail sentence.

In addition, the court prepared written findings of fact, conclusions of law and contempt order in compliance with section 665.9. Pursuant to section 665.10, the order stated it shall stand as the warrant of commitment and that the contempt punished occurred in the personal presence of the court and was not proved by other witnesses.

In its written conclusions of law, the court stated:

> The defendant's refusal to obey the order goes to the very heart of the judicial process and it denies to the State a right to cross-examine the defendant concerning his direct testimony on a crucial element in this case, i. e. the defendant's purpose of profit, if any.

After resumption and completion of the jury trial, Gibb was convicted on all three counts of delivery for profit. Ten-year prison terms and a fine were imposed on each conviction.

The contempt sentence was ordered to be served concurrently with the drug sentences. Gibb does not contest the severity of the contempt sentence.

During the contempt hearing, Gibb, although represented by counsel, made no objection to the procedures used and did not ask to be able to file a written explanation for his conduct.

The question asked and Gibb's reason for not answering were clear. The issue came down to whether or not Gibb could legally refuse to answer the posed question. If his refusal was proper, he could not validly be found in contempt of the court's order to answer. Otherwise, he was in contempt.

We granted Gibb's petition for writ of certiorari to review the court's contempt order under section 665.11. Certiorari is a procedure to test whether a lower board, tribunal or court exceeded its proper jurisdiction or otherwise acted illegally. Iowa R.Civ.P. 306. It is an action at law and is not triable here de novo. "Generally findings of fact are not reviewable on certiorari, but when a judgment of contempt is challenged, the rule is that we examine the evidence, not de novo, but to assure ourselves that proof of contempt is clear and satisfactory. . . . This is an exception to our ordinary rule on certiorari." *Lane v. Oxberger,* 224 N.W.2d 245, 247 (Iowa 1974).

Certain other principles must be considered in our review of the issues presented. We have said the contempt power "is indispensable to the protection of due and orderly administration of justice and in maintaining the authority and dignity of the court. 'But its exercise is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions.'" *Knox v. Municipal Court,* 185 N.W.2d 705, 707 (Iowa 1971). Plaintiff has the burden to show defendant has exceeded his proper jurisdiction or otherwise acted illegally. *Newby v. District Court,* 259 Iowa 1330, 1336, 147 N.W.2d 886, 890 (1967); Iowa R.Civ.P. 306.

Before considering the main issue presented to the trial court, we briefly dispose of the first and second issues raised here by Gibb.

*I. Constitutional attacks on chapter 665, The Code.* Gibb claims, as one accused of contempt committed before the court where the punishment to be imposed exceeds a fine of $100 or imprisonment for thirty days, he had the following rights guaranteed under Iowa Constitution article I, sections 9, 10, and 11: the right to a speedy and public trial by an impartial jury; the right to be informed of the accusation against him and to have a copy of the same

when demanded; the right to be confronted with the witnesses against him; the right to have compulsory process for his witnesses; and the right to have assistance of counsel. He says that to the extent chapter 665, The Code 1979, did not afford him these rights, it is void and unconstitutional. We discussed some of these contentions briefly in *Newby,* 259 Iowa at 1341–42, 147 N.W.2d at 893–94.

However, none of these questions set forth by plaintiff for our review were ever presented to the district court. "The rule is well established that in certiorari actions we will not review questions not presented to the so-called inferior tribunal (see rule 306, Rules of Civil Procedure)." *Lenertz v. Municipal Court,* 219 N.W.2d 513, 515 (Iowa 1974); *Newby,* 259 Iowa at 1341–42, 147 N.W.2d at 893. Gibb was obliged to raise them before the district court. Since he did not do so, he failed to preserve error for review here. *State v. Rinehart,* 283 N.W.2d 319, 324 (Iowa 1979); *Erb v. Iowa State Board of Public Instruction,* 216 N.W.2d 339, 342 (Iowa 1974).

■ *II. Written explanation under section 665.7, The Code.* Gibb next contends he should have been given an opportunity, under section 665.7,[1] to make a written explanation of his conduct under oath. He says the court should have offered him such an opportunity; therefore, the contempt finding was invalid.

In addition to Gibb failing to ask the court for opportunity to make a written explanation, we initially note the court did ask Gibb if he desired to make any statement concerning his action in refusing to answer the question. Plaintiff was given numerous opportunities to explain his refusal and he did make an oral statement. *See* *Knox,* 185 N.W.2d at 710–11. Gibb's attorney also made an oral argument on plaintiff's behalf.

Assuming, without having to decide, that Gibb had a right to make a written explanation of his conduct under oath, we find that plaintiff waived any such right at the contempt proceeding.

■ Section 665.7 states that an offender in a contempt proceeding "may, at his option, make a written explanation of his conduct under oath . . . ." § 665.7. The language of the statute clearly places the burden of requesting to make such a written explanation on the plaintiff herein. Gibb did not make such a request and cannot now, at this late date, be allowed to exercise his option under the statute.

■ In addition, Gibb's contention was not raised in his petition for writ of certiorari to this court and cannot be raised for the first time in his brief here. *Manning v. Engelkes,* 281 N.W.2d 7, 10 (Iowa 1979); *Iowa Employment Security Commission v. Iowa Merit Employment Commission,* 231 N.W.2d 854, 858 (Iowa 1975); *Newby,* 259 Iowa at 1341, 147 N.W.2d at 893. We have nothing to review on the second contention either.

This brings us to the main issue that was presented to the district court in the contempt proceeding.

*III. Propriety of Gibb's refusal to answer the cross-examination question.* Gibb claims that under Iowa Constitution article I, section 1, he had a right to refuse to answer the prosecution's cross-examination question as to the identity of the persons who supplied him with the cocaine he delivered and sold to a third party. He testified that answering the question would have endangered the safety of himself and his family. He gave no details to justify his claimed fear.

Iowa Constitution article I, section I, provides as follows: "All men are, by nature, free and equal, and have certain inalienable

---

1. Section 665.7, The Code, provides:

Before punishing for contempt, unless the offender is already in the presence of the court, he must be served personally with a rule to show cause against the punishment, and a reasonable time given him therefor; or he may be brought before the court forthwith, or on a given day, by warrant, if necessary. In either case *he may, at his option, make a written explanation of his conduct under oath,* which must be filed and preserved. [Emphasis added.]

rights—among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, *and pursuing and obtaining safety* and happiness." (Emphasis added).

Gibb says the court acted illegally and in violation of his stated constitutional right to pursue and obtain safety in finding him in contempt for refusing to answer the question posed; therefore, the writ should be sustained and the court's order annulled.

 We have said in another context, "The constitutional right to *life* and *liberty* . . . is not a mere glittering generality without substance or meaning." *State v. Osborne,* 171 Iowa 678, 693, 154 N.W. 294, 300 (1915) (emphasis added). But this right is "subject, of course, . . . to such reasonable regulations as the peace, comfort and welfare of society may demand." *Id.* We have further stated, in quoting from *Chicago, Burlington & Quincy Railroad v. McGuire,* 219 U.S. 549, 567, 31 S.Ct. 259, 262, 55 L.Ed. 328, 338 (1910), that " '[l]iberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community.' " *Benschoter v. Hakes,* 232 Iowa 1354, 1361, 8 N.W.2d 481, 486 (1943). When a private right is tinged with public concern, that right may be subjected to reasonable regulations and prohibitions by a lawful exercise of the State's police powers. *Id.* at 1361–62, 8 N.W.2d at 486. Whether the exercise of the police powers is proper depends on whether the collective benefit outweighs the specific restraint of individual liberty. *Id.* at 1361, 8 N.W.2d at 485. These same principles also apply in cases, such as this one, where one's right to pursue and obtain safety under article I, section 1, is at issue.

It is necessary that we weigh Gibb's specific asserted right to pursue and obtain safety against the state's interests in requiring an answer from Gibb. In this case the State alleges a right to cross-examine Gibb as an ordinary witness on a material issue covered during his direct examination.

The State's right of cross-examination is based on Iowa R.Crim.P. 19(1), which states in part:

A defendant in a criminal action or proceeding shall be a competent witness in his or her own behalf, but cannot be called by the state. If the defendant offers himself or herself as a witness, the defendant may be cross-examined as an ordinary witness, but the state shall be strictly confined therein to the matters testified to in the examination in chief.

 There is no doubt that the State had a right to ask Gibb, on cross-examination, who his cocaine supplier was. Plaintiff's defense was that he made no profit any time he delivered cocaine for his supplier, in that all of the money given to him was or was going to be turned over to his supplier. It was material to the State's case against Gibb that the validity of plaintiff's story be checked, and because Gibb himself testified on direct examination he did not profit from the cocaine transactions the State's question was proper. Iowa R.Crim.P. 19(1).

 Under this record, Gibb's refusal to answer, in effect, unjustifiably denied the prosecution the right to cross-examine him under Iowa R.Crim.P. 19(1) on a material matter raised by Gibb on direct examination. Cross-examination is a right essential to a fair trial. *Avery v. Harms Implement Company,* 270 N.W.2d 646, 650 (Iowa 1978). It is proper for a defendant to be subjected, during cross-examination by the State, to questions covering an area in which he has been interrogated by his own counsel on direct examination. *State v. Jackson,* 195 N.W.2d 687, 691 (Iowa 1972).

Gibb cites *State v. Cuevas,* 282 N.W.2d 74, 81 (Iowa 1979), which quoted from *State v. Sheffey,* 250 N.W.2d 51, 55 (Iowa 1977) as follows:

"Ordinarily one has the right to cross-examine a witness concerning his address, occupation and other routine matters. However, that right is not absolute and may be restricted to protect a witness from embarrassment, harassment, or threats to [his] safety."

In *Cuevas* and *Sheffey* we upheld trial court rulings that a state's witness need not

give his current address due to security reasons. Gibb says he should have been given a similar ruling. However, in those two cases we regarded a current address as a routine matter. That is quite different from the subject matter opened up on the direct examination of Gibb. He testified he made no profit on the drug deliveries because he did or would give all the money he received from the transactions to his drug suppliers. The probative value of the information sought by the prosecutor's question here was significant. In addition, the State made a sufficient factual showing in both *Cuevas* and *Sheffey* that disclosure of the witnesses' addresses would be dangerous to them. Gibb made no such factual showing but only stated he and his family would be in danger if he answered the question. Therefore, *Cuevas* and *Sheffey* are distinguishable on their facts from the present case.

Gibb also cites *United States v. McKinley,* 493 F.2d 547, 550 (5th Cir. 1974) and *United States v. Alston,* 460 F.2d 48, 52–54 (5th Cir. 1972). Both cases also involved the refusal to reveal at trial the addresses of undercover drug agents.

██ Several other courts have faced the issue of whether an undercover agent's address need be revealed at trial when the agent claims that revelation of his address would endanger the safety of himself and his family. *E. g., United States v. Hansen,* 569 F.2d 406, 410 (5th Cir. 1978); *United States v. Penick,* 496 F.2d 1105, 1108 (7th Cir. 1974), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 141 (1974). These courts, as well as the *McKinley* and *Alston* courts, recognize that a witness's fear must be weighed against the trial court's need for the information. *E. g., Hansen,* 569 F.2d at 410; *McKinley,* 493 F.2d at 551; *Alston,* 460 F.2d at 52–54. An examining party has the right to place a witness in his proper setting, but once this has been accomplished by eliciting information other than the witness's address, then the need for the witness's address becomes minimal. *Hansen,* 569 F.2d at 410; *McKinley,* 493 F.2d at 551. The courts in *Alston* and

*McKinley* found that the need for the information was minimal and that the defendant's right of cross-examination had not been significantly impaired. *McKinley,* 493 F.2d at 551; *Alston,* 460 F.2d at 52–54. None of these cases established a *per se* rule that fear for one's safety is sufficient grounds for refusing to reveal one's address upon examination at trial. As a matter of fact, in *United States v. Fife,* 573 F.2d 369, 376 (6th Cir. 1976), the court stated that the mere expression of apprehension by a witness who is reluctant to divulge his address is not a sufficient reason to justify limiting cross-examination.

Although obviously not involving article I, section 1, of our Iowa Constitution, several courts have spoken further on the fear for safety issue.

██ The United States Supreme Court, in a case involving a grand jury witness who, nonetheless, refused to testify on fifth amendment grounds, noted that fear for one's self or one's family is not a legal excuse for refusing to testify. *Piemonte v. United States,* 367 U.S. 556, 559 n. 2, 81 S.Ct. 1720, 1772, 6 L.Ed.2d 1028, 1031 (1961). The Court, in support of this proposition, cited the maxim that "the public has the right to every person's evidence" and further stated that every citizen owes to society the duty of giving testimony to aid in the enforcement of the law. *Id.* This right gives way when a witness asserts a valid, legal privilege not to answer the question posed to him. *Kastigar v. United States,* 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212, 216–17 (1972).

██ Several courts have adhered to the principle that fear of reprisal cannot excuse a witness from testifying to an issue material to the trial of a case. *E. g., United States v. Damiano,* 579 F.2d 1001, 1004 (6th Cir. 1978); *United States v. Gomez,* 553 F.2d 958, 959 (5th Cir. 1977); *United States v. Housand,* 550 F.2d 818, 825 (2d Cir. 1977), *cert. denied,* 413 U.S. 970, 97 S.Ct. 2931, 53 L.Ed.2d 1066 (1977); *United States v. Patrick,* 542 F.2d 381, 388 (7th Cir. 1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *In re Long Visitor,* 523

F.2d 443, 447–48 (8th Cir. 1975); *United States v. Leyva,* 513 F.2d 774, 780 (5th Cir. 1975); *In re Grand Jury Proceedings,* 509 F.2d 1349, 1350 (5th Cir. 1975); *In re Kilgo,* 484 F.2d 1215, 1221 (4th Cir. 1973); *LaTona v. United States,* 449 F.2d 121, 122 (8th Cir. 1971); *Commonwealth v. Johnson,* 365 Mass. 534, 544, 313 N.E.2d 571, 577 (1974). When information within a witness's knowledge is potentially important to a case, a witness must then tell what he knows. *Johnson,* 365 Mass. at 546, 313 N.E.2d at 578. The fact that a witness may have to make personal sacrifices in testifying is an element of one's social duty to aid in the execution of justice. *Id.* at 544, 313 N.E.2d at 577. "[T]he discomfort *any* witness has in testifying against his wishes about matters within his knowledge, cannot outweigh the court's interest in getting the facts necessary to make a reasoned and informed decision." *In re Michaelson,* 511 F.2d 882, 891 (9th Cir. 1975), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975). This rationale should be equally applicable to defendants who testify as witnesses in their own defense.

In balancing Gibb's right to pursue and obtain safety against the State's interest in cross-examining plaintiff on a material issue, we note that the State's interest is strengthened substantially by the additional interest the court has in seeing that all material facts, necessary to guarantee that the law is enforced through reasoned and informed decisions, are presented before the fact finder at trial.

Gibb presented no specific evidence other than his own general statement to show he personally had grounds for fearing for the safety of himself and family. There is no record of threats on himself or his family or that he sought police protection for his family so he could testify.

Gibb asks that we extend the principle of *Cuevas* and *Sheffey* in the present situation to require the trial court to employ a balancing test, weighing the likelihood and magnitude of reprisal against the actual need for the evidence at trial. We agree and adopt that test.

We have reviewed the record in light of that test to determine whether reversible error occurred. However, we conclude Gibb failed to make an adequate evidentiary record to justify his general claim of fear of reprisal sufficient to overcome the obvious materiality of and entitlement of the State to the requested evidence under rule 19(1), particularly in light of the court's legitimate objective to seek the truth on a material issue ultimately presented to the factfinder for determination. The bald assertion by Gibb that he was afraid of retaliation against himself and his family should he answer the question posed to him does not support a finding that there was a sufficient likelihood and magnitude of reprisal to outweigh the State's and court's interests herein.

We have considered this case only on the record presented. We do not foreclose the possibility that a witness in a future case could make a proper evidentiary showing to support a valid assertion of a right to safety under Iowa Constitution article I, section 1, as a basis for refusing to answer on cross-examination an otherwise proper question relating to a material issue at trial. *See generally United States v. Powers,* 477 F.Supp. 497 (S.D.Iowa 1979).

We hold the court legally found Gibb in contempt for refusing to obey the court's order to answer the question posed on cross-examination.

All contentions made by Gibb on this issue have been considered even though not specifically discussed.

The district court was right. The writ is annulled.

WRIT ANNULLED.